SUPREME COURT OF ARIZONA

| | | |
|---|---|---|
| DUANE LYNN, | ) | Arizona Supreme Court |
| | ) | No. CV-02-0435-PR |
| Petitioner, | ) | |
| v. | ) | Court of Appeals |
| | ) | Division One |
| HON. PETER C. REINSTEIN, JUDGE | ) | No. 1 CA-SA 02-0309 |
| OF THE SUPERIOR COURT OF THE | ) | |
| STATE OF ARIZONA, in and for the | ) | Maricopa County |
| County of Maricopa, | ) | Superior Court |
| | ) | No. CR 2000-006872 |
| Respondent Judge, | ) | |
| | ) | |
| RICHARD GLASSEL; STATE OF | ) | |
| ARIZONA, | ) | |
| | ) | **O P I N I O N** |
| Real Parties in Interest. | ) | |
| | ) | |

Special Action from the Superior Court in Maricopa County
The Honorable Peter C. Reinstein, Judge

**AFFIRMED**

Court of Appeals, Division One
Decision Order, filed December 23, 2002

**AFFIRMED**

MILLER LaSOTA & PETERS, P.L.C.                              Phoenix
     by   Timothy A. LaSota
and
Arizona Voice for Crime Victims                          Scottsdale
     by   Steven J. Twist
Attorneys for Petitioner

ROBERT S. BRINEY, MARICOPA LEGAL DEFENDER                   Phoenix
     by   Dennis C. Jones
Attorneys for Real Party in Interest, Richard J. Glassel

RICHARD M. ROMLEY, MARICOPA COUNTY ATTORNEY                 Phoenix
     by   Paul J. McMurdie
Attorneys for Real Party in Interest, State of Arizona

**B E R C H**, Justice

¶1        Richard Glassel opened fire at a homeowners' association

meeting, killing Nila Lynn, Petitioner Duane Lynn's wife.  In the ensuing first degree murder case against Glassel, Petitioner asserted a right under Arizona's Victims' Bill of Rights, Ariz. Const. art. 2, § 2.1, to tell the jurors what sentence he thought they should impose on Glassel.  He seeks review of the rulings of the trial court and court of appeals that he may not state his opinion on that subject.

## BACKGROUND

¶2      Richard Glassel was convicted of murdering Petitioner's wife of nearly fifty years.  Petitioner asked the court to allow him, during the sentencing phase of Glassel's trial, to tell the jury not only about his wife's character and the loss caused by Glassel's acts, but also to express his opinion regarding the appropriate sentence to be imposed.  The motion stated Petitioner's intent to recommend that Glassel receive a sentence of life in prison.  Glassel did not object to Petitioner's request to recommend leniency, but the State did.

¶3      The trial judge allowed the victim impact statements,[1]

---

[1]      Petitioner does not claim that he was not allowed to provide information regarding his wife or the impact of the crime on his life.  While the record in this special action is not developed on this point, we presume that Petitioner was permitted to give a victim impact statement, which, by statute, may include "information about the murdered person and the impact of the murder on the victim and the other family members."  Ariz. Rev. Stat. ("A.R.S.") § 13-703.01(Q) (Supp. 2002).  We therefore assume that, at the appropriate time, Petitioner was allowed to present such information.

but denied the motion as to sentencing recommendations, concluding that a victim's sentencing recommendations are not relevant to either the mitigating or aggravating factors involved in capital sentencing and that precluding Petitioner's opinion on sentencing did not violate his rights as a crime victim.

¶4    The court of appeals accepted jurisdiction of Petitioner's special action, but denied relief. *Lynn v. Reinstein (Glassel)*, 1 CA-SA 02-0309, 4 (Ariz. App. Dec. 23, 2002) (dec. order).  The court observed that nearly all states prohibit victims from offering sentencing recommendations in capital cases.  *Id.* at 2.  The court also found Arizona case law clear that "sentencing recommendations offered by a deceased's survivors have no relevance in a capital case."  *Id.* at 3 (quoting *State v. Bocharski*, 200 Ariz. 50, 62, ¶ 64, 22 P.3d 43, 55 (2001)).

¶5    Although Glassel has already been sentenced, we accepted review because the question whether a victim in a capital case may express an opinion as to what sentence the jury should impose may arise in future cases.  *See* Ariz. Const. art. 6, § 5(3) (granting authority to review cases); Ariz. R.P. Spec. Act. 8(b); ARCAP 23. Following binding precedent from the United States Supreme Court, we hold that the Eighth Amendment to the United States Constitution prohibits a victim from making a sentencing recommendation to the

jury in a capital case.[2]

## DISCUSSION

¶6      The Arizona Victims' Bill of Rights "protect[s] victims' rights to justice and due process." Ariz. Const. art. 2, § 2.1(A). As one whose spouse was murdered, Petitioner qualifies as a victim of a crime. *See id.* § 2.1(C) (including the spouse of a person against whom a crime has been committed as a "victim"); Ariz. Rev. Stat. ("A.R.S.") § 13-703.01(R)(2) (Supp. 2002) (same). As such, Petitioner is entitled by the Arizona Victims' Bill of Rights to "be heard at any proceeding involving . . . sentencing." Ariz. Const. art. 2, § 2.1(A)(4); *see also* A.R.S. § 13-4426(A), (B) (2001) (affording victims the right to "address the court" regarding "opinions that concern . . . the sentence . . . at any aggravation, mitigation, presentencing, or sentencing proceeding"). At issue in this case is whether that right encompasses a right to opine regarding the sentence itself, or whether the right is

---

[2]    *See* U.S. Const. art. VI, cl. 2; *accord State v. Ring*, __ Ariz. ____, ¶ 61, 65 P.3d 915, 938 (2003) ("We cannot ignore a Supreme Court decision interpreting federal law unless the Court expressly overrules or casts cognizable doubt on that decision."). Because we hold that the Eighth Amendment prohibits a victim from making a sentencing recommendation to the jury in a capital case, we do not discuss whether Arizona law would permit such a recommendation. Although we usually decide issues of statutory construction before delving into constitutional issues, the clarity of the Supreme Court's Eighth Amendment analysis on this point renders the additional analysis unnecessary. *See R.L. Augustine Constr. Co. v. Peoria Unified Sch. Dist. No. 11*, 188 Ariz. 368, 370, 936 P.2d 554, 556 (1997) (stating that this court "will not reach a constitutional question if a case can be fairly decided on nonconstitutional grounds").

limited to offering testimony regarding the victim and the impact of the crime upon the victim and the victim's family.

¶7        The rights granted to victims are to "be liberally construed." A.R.S. § 13-4418. Petitioner contends that a liberal construction of the Arizona Constitution and victims' rights statutes compels the conclusion that a victim may recommend to the jury in a capital sentencing proceeding the sentence that the victim believes the jury should impose.[3] He reasons that because victims' opinions on sentencing are admissible in non-capital cases, they should also be allowed in capital cases, for "[n]othing . . . suggests that, as the severity of the crime escalates, the victim's rights should diminish."

¶8        To the contrary, however, Supreme Court death penalty jurisprudence has recognized that "death is a 'punishment different from all other sanctions,' and that therefore the considerations that inform the sentencing decision may be different from those that" apply to other punishments. *Booth v. Maryland*, 482 U.S. 496, 509 n.12, 107 S. Ct. 2529, 2536 n.12 (1987) (internal citation omitted), *overruled in part by Payne v. Tennessee*, 501 U.S. 808, 111 S. Ct. 2597 (1991). Thus, while states generally enjoy latitude in designing and implementing their criminal justice

---

[3]        During the course of the special action proceedings, Petitioner apparently changed his recommendation from life in prison to death. Glassel then objected to allowing Petitioner to make a recommendation.

systems, "the Eighth Amendment imposes special limitations" upon the process for imposing the death penalty. *Payne*, 501 U.S. at 824, 111 S. Ct. at 2607-08. Consequently, Arizona may not permit victims to recommend sentences in capital cases if the Eighth Amendment prohibits such recommendations.

¶9          In 1987, the Supreme Court examined the admissibility in a capital trial of the victims' statements regarding the impact of the defendant's crimes. *See Booth*, 482 U.S. at 496, 107 S. Ct. at 2529. The victims' statements in *Booth* fell into three categories: (1) statements regarding the deceased's personal characteristics; (2) statements regarding the impact of the crime on the victims' family; and (3) the victims' "family members' characterizations and opinions about the crime, the defendant, and the appropriate sentence." *Payne*, 501 U.S. at 830 n.2, 111 S. Ct. at 2611 n.2 (characterizing the victim impact evidence in *Booth*). The Court observed that sentencing decisions must be based only "on 'the character of the individual [defendant] and the circumstances of the crime.'" *Booth*, 482 U.S. at 502, 107 S. Ct. at 2532 (quoting *Zant v. Stephens*, 462 U.S. 862, 879, 103 S. Ct. 2733, 2743 (1983)). The Court therefore carefully scrutinized a state statute *requiring* the consideration of information regarding the victim, in order to minimize "the risk that a death sentence will be based on considerations that are 'constitutionally impermissible or totally irrelevant to the sentencing process.'" *Id.* at 502, 107 S. Ct. at

2533 (quoting *Zant*, 462 U.S. at 885, 103 S. Ct. at 2747). The Court determined that victims' opinions regarding the crime and appropriate sentence "can serve no other purpose than to inflame the jury and divert it from deciding the case on the relevant evidence concerning the crime and the defendant." *Id.* at 508, 107 S. Ct. at 2536. In a sharply divided opinion, the Court held that "the introduction of a [victim impact statement] at the sentencing phase of a capital murder trial violates the Eighth Amendment," and therefore held unconstitutional a state statute requiring the consideration of such information. *Id.* at 509, 107 S. Ct. at 2536.

¶10    The four-member dissent in *Booth* focused on society's growing concern for the rights of victims of crime, a concern that has culminated in a movement to address "the failure of courts of justice to take into account in their sentencing decisions not only the factors mitigating the defendant's moral guilt, but also the amount of harm he has caused to innocent members of society." *Id.* at 520, 107 S. Ct. at 2542 (Scalia, J., dissenting). The majority's limitation of relevant evidence regarding a defendant's blameworthiness also troubled the Court's dissenting members. Justice White observed that the harm caused by a defendant's criminal conduct should be relevant to sentencing and that a murderer should be held "accountable not only for his internal disposition in committing the crime but also for the full extent of the harm he caused." *Id.* at 516, 107 S. Ct. at 2540 (White, J.,

dissenting).

¶11    Just four years later, the Court overruled aspects of *Booth*'s broad prohibition on the presentation of victim impact evidence.  *Payne*, 501 U.S. at 827-30 & n.7, 111 S. Ct. at 2609-11 & n.7.  While not ruling all victim statements admissible, the Court in *Payne* determined that a witness's testimony regarding the effect of the defendant's crime may be relevant to sentencing, and it removed the per se bar to the admission of such evidence that *Booth* had erected.  *Id.* at 825-27, 111 S. Ct. at 2608-09.

¶12    Petitioner asserts that *Payne* overruled all barriers to the admissibility of victim opinion statements.  We think Petitioner "moves too quickly over the terrain we must cover." *Caterpillar, Inc. v. Lewis*, 519 U.S. 61, 73, 117 S. Ct. 467, 475 (1996).  The Court's opinions in *Payne* are carefully circumscribed. The majority opinion notes that the case did not involve victim statements regarding the appropriate sentence to be imposed. *Payne*, 501 U.S. at 830 n.2, 111 S. Ct. at 2611 n.2.  Justice O'Connor's concurring opinion, in which Justices White and Kennedy joined, echoes this limitation, *id.* at 833, 111 S. Ct. at 2612-13 (O'Connor, J., concurring), as does Justice Souter's concurring opinion, *id.* at 835 n.1, 111 S. Ct. at 2614 n.1 (Souter, J., concurring) ("This case presents no challenge to the Court's holding in *Booth v. Maryland* that a sentencing authority should not receive a third category of information concerning a victim's

family members' characterization of and opinions about the crime, the defendant, and the appropriate sentence."). Thus *Payne* did not overrule and indeed left intact that portion of *Booth* that the Court itself has characterized as prohibiting victims from recommending a sentence in a capital case.[4] *Id.* at 830 n.2, 111 S. Ct. at 2611 n.2.

¶13    The Court's opinion in *Payne* recognized that the characteristics of the victim and the impact of the crime on the victim's family may be relevant in determining blameworthiness and culpability and in assessing the harm caused by the defendant's conduct and, therefore, such evidence is relevant in determining whether the death penalty should be imposed. *See id.* at 825-27, 111 S. Ct. at 2608-09. The Court concluded that, in determining a "defendant's moral culpability and blameworthiness," states may allow jurors to hear evidence of the specific harm the defendant has caused. *Id.* at 825, 111 S. Ct. at 2608. The Court reasoned

---

[4]    The victims' statements in *Booth* only indirectly hinted at the punishment the victims were recommending. Indeed the only statements regarding sentencing were that the victims did not "think anyone should be able to do something like [the murders at issue] and get away with it" and that "the people who did this could [n]ever be rehabilitated." *Booth*, 482 U.S. at 508, 107 S. Ct. at 2535-36. No specific recommendations regarding sentencing were made. Thus the facts in *Booth* make it unclear whether the Court in that case considered the effect of the Eighth Amendment on opinions regarding sentencing. In *Payne*, however, the Court characterized *Booth* as prohibiting not only family members' opinions and characterizations, but also recommendations of "the appropriate sentence." *Payne*, 501 U.S. at 830 n.2, 111 S. Ct. at 2611 n.2. We defer to the Court's interpretation of its own case.

that because victim impact evidence serves "entirely legitimate purposes," *id.*, "[t]here is no reason to treat such evidence differently than other relevant evidence is treated." *Id.* at 827, 111 S. Ct. at 2609. But while *Payne* overruled *Booth*'s per se ban on victims' statements regarding the victim and the impact of the crime on the victim's family, it did not find victims' sentencing opinions relevant.[5] *Id.* at 827, 830 & n.2, 111 S. Ct. at 2609, 2611 & n.2; *accord State v. Sansing,* 200 Ariz. 347, 358, ¶¶ 35-37, 26 P.3d 1118, 1129 (2001) (affirming the trial court's refusal to consider the victim's ten-year-old daughter's request for mercy as a mitigating circumstance because the request for mercy was not relevant to mitigation), *vacated on other grounds by* 122 S. Ct. 2654 (2002). Indeed, the Supreme Court carefully limited its opinion in *Payne*, 501 U.S. at 830 n.2, 111 S. Ct. at 2611 n.2, and did not disturb its earlier determination that victim sentencing opinions were not only irrelevant in capital sentencing proceedings, but might well be prejudicial. *See Booth*, 482 U.S. at

---

[5]     The "relevance" referred to in *Booth* differs from that set forth in the state rules of evidence. It is a constitutional concept that considers whether information that may bear upon the capital sentencing decision creates a constitutionally unacceptable risk that jurors may impose a death sentence based upon impermissible arbitrary and emotional factors. *Booth*, 482 U.S. at 504-05 & n.7, 107 S. Ct. at 2533-34 & n.7.; *cf. Eddings v. Oklahoma*, 455 U.S. 104, 110, 113-14, 102 S. Ct. 869, 874, 876-77 (1982); *Lockett v. Ohio*, 438 U.S. 586, 604-05, 98 S. Ct. 2954, 2964-65 (1978) (discussing Eighth Amendment constitutional relevance of evidence bearing on mitigation factors in capital cases).

508-09, 107 S. Ct. at 2535-36.

¶14    Petitioner relies on cases from Oklahoma in support of his position that victims' opinions regarding sentencing should be allowed in capital cases.  These cases are premised on an Oklahoma statute that purports to allow victims to suggest to jurors the sentence.  *See, e.g., Ledbetter v. State*, 933 P.2d 880 (Okla. Crim. App. 1997) (applying Okla. Stat. tit. 22, § 984(1)).  Yet even the Oklahoma courts recognize that such "evidence may not pass scrutiny by the United States Supreme Court" in light of its decision in *Payne*, 501 U.S. at 830, 111 S. Ct. at 2611.  *State v. Hain*, 919 P.2d 1130, 1144 n.3 (Okla. Crim. App. 1996).  Moreover, we note that the Tenth Circuit, sitting on habeas corpus review in *Hain*, recently held that the Oklahoma court violated the defendant's Eighth Amendment rights by allowing the victims in that case to offer opinions regarding the appropriate sentence.  *Hain v. Gibson*, 287 F.3d 1224, 1238-39 (10th Cir. 2002).  Thus, we are unpersuaded to follow the reasoning of the Oklahoma Court of Criminal Appeals in this area.

¶15    Finally, Petitioner has urged that a victim has status as a "limited party" in a capital case and this status entitles the victim to opine regarding the sentence to be imposed.  Petitioner cites no authority in support of his asserted status, and we find none.  No statute or rule confers party status upon a victim, and the one case addressing the point held that a victim is not an

aggrieved party for purposes of filing a petition seeking review of a court's grant of post-conviction relief. *See State v. Lamberton*, 183 Ariz. 47, 899 P.2d 939 (1995). In *Lamberton*, this court acknowledged a victim's standing "only to 'seek an order or to bring a special action' to assert the enumerated rights guaranteed by the [Victims' Bill of Rights]." *Id.* at 50, 899 P.2d at 942 (quoting A.R.S. § 13-4437). Moreover, Petitioner conceded at oral argument that even a party may not opine regarding irrelevant facts or unfairly prejudicial issues. We thus conclude that victims are not parties to a defendant's criminal case.

¶16 Victims deserve to be heard and to receive fair treatment in the criminal justice system. Indeed, the Supreme Court recognized as much when it reaffirmed Justice Cardozo's statement that "justice, though due to the accused, is due to the accuser also. The concept of fairness must not be strained till it is narrowed to a filament. We are to keep the balance true." *Payne*, 501 U.S. at 827, 111 S. Ct. at 2609 (quoting *Snyder v. Massachusetts*, 291 U.S. 97, 122, 54 S. Ct. 330, 338 (1934)). The Court thus removed the per se bar to the admission of victims' statements regarding the effect of a crime upon their lives, requiring only that the states determine the victim impact statements "relevan[ce] to the jury's decision as to whether or not the death penalty should be imposed." *Id.* It did not, however, remove the bar precluding sentencing recommendations.

¶17    While the Court has recognized the victims' desire to tell jurors of the effect of a defendant's crime upon their lives, the victims' right to speak is not unlimited.  Statements relevant to the harm caused by the defendant's criminal acts are no longer barred by the Eighth Amendment.  But statements regarding sentencing exceed those bounds and violate the Eighth Amendment, and therefore are prohibited.  Victims' recommendations to the jury regarding the appropriate sentence a capital defendant should receive are not constitutionally relevant to the harm caused by the defendant's criminal acts or to the defendant's blameworthiness or culpability.  *See State v. Mann*, 188 Ariz. 220, 228, 934 P.2d 784, 792 (1997); *State v. Williams*, 183 Ariz. 368, 385, 904 P.2d 437, 454 (1995).  Petitioner's request to opine regarding sentencing, therefore, is denied.

## CONCLUSION

¶18    The rulings of the trial court and the court of appeals are affirmed.


_____
Rebecca White Berch, Justice


CONCURRING:


_____
Charles E. Jones, Chief Justice

_____
Ruth V. McGregor, Vice Chief Justice


_____
Michael D. Ryan, Justice


_____
A. John Pelander, Judge*


*Pursuant to Arizona Constitution, article 6, section 3, the Honorable A. John Pelander, Judge of the Arizona Court of Appeals, Division 2, was designated to sit on this case.

-14-