235 P.3d 1040 (2010)
Angela MARTIN-COSTA, Petitioner,
v.
The Honorable William T. KIGER and Warren R. Darrow, Judges of the Superior Court of the State of Arizona, in and for the County of Yavapai, Respondent Judges.
The State of Arizona, and Ricardo Azevedo Costa; and Bruce Griffen, Esq., Real Parties in Interest.
No. 1 CA-SA 10-0099.
Court of Appeals of Arizona, Division 1, Department E.
July 6, 2010.
*1042 Arizona Voice for Crime Victims By Douglas L. Irish, Keli B. Luther, Phoenix, Attorneys for Petitioner.
Aspey, Watkins & Diesel, P.L.L.C. By Bruce S. Griffen, Flagstaff, Attorneys for Real Party in Interest Ricardo Azevedo Costa.

OPINION
HALL, Judge.
¶ 1 Does the Victims' Rights Implementation Act (Implementation Act) grant a crime victim standing to seek the disqualification of the trial judge and defense counsel? We conclude that it does not. We also conclude that the victim's mother, as a former client of defense counsel's law firm, cannot intervene in the underlying criminal case to seek disqualification of defense counsel. Therefore, we dismiss the petition for special action.

FACTUAL AND PROCEDURAL BACKGROUND
¶ 2 Petitioner Angela Martin-Costa (Mother) and real party in interest Ricardo Costa (Father) have three minor children in common. In 2007, Mother and Father commenced divorce proceedings. From May 2007 to September 2007, Mother was represented by two attorneys from the law firm Aspey, Watkins & Diesel (AWD).[1] During this representation, Mother was advised to retain a licensed counselor and therapist to evaluate two of the minor children, E. and S. In December 2008, based on disclosures by E. and S. during their therapy sessions, Father was charged with several counts of sexual assault and molestation.
¶ 3 On January 12, 2009, Bruce Griffen, an AWD partner who had no involvement in AWD's representation of Mother, entered his appearance as Father's criminal defense attorney. On January 25, 2009, Mother wrote a letter to AWD asserting that Griffen should not represent Father in the criminal proceeding based on a conflict of interest created by AWD's previous representation of Mother during the divorce proceedings. Griffen met with Deputy County Attorney Joseph Butner to discuss the possible conflict. Butner and Griffen decided to have the trial judge, the Honorable Warren R. Darrow, determine whether a conflict existed. Griffen submitted AWD's sealed case file from its representation of Mother and Butner submitted Mother's case file[2] for Judge Darrow's in camera inspection. Judge Darrow also reviewed the dissolution file from Yavapai County Superior Court.
¶ 4 On April 13, 2009, Judge Darrow held a hearing on the matter. At the hearing, Griffen avowed that he had no specific knowledge of the divorce proceedings and that he had never reviewed AWD's file on Mother's case or discussed it substantively with any other AWD attorney. Judge Darrow addressed Father directly, informing him of the possible conflict and the restrictions it might place on Griffen's cross-examination of Mother should she testify at trial. Father expressly waived the conflict and requested to proceed with Griffen as defense counsel. Judge Darrow, Butner, and Griffen then had the following exchange:
THE COURT: I don't  I was concerned about this in being asked to review the records whether or not the decision would require me to do that. It puts [t]he [j]udge in a very difficult position.
I mentioned to the attorneys just in looking through I saw one document that wouldn't be considered a communication. I'm not going to describe it in any detail here. I would describe it more information that was obtained by Mr. Griffen's firm in the course of representation, which gives it the protection under the ethical rules from disclosure.
And it was just the one document or set of  it wasn't one document. It was a set. It's not terribly extensive but it's more *1043 than one page. This was material that was in the file submitted by Mr. Griffen. I did not see it in the materials submitted by Mr. Butner.
. . . .
I'm just not really exactly sure. I've never been in this kind of a position before in what to do with that information. I feel I need to disclose it. But I don't know if it's discoverable or not.
. . . .
BUTNER: I don't think that it's appropriate that either I end up with that and disclose it or that [t]he [c]ourt ends up disclosing it. It was privileged, so to speak, when it was gathered by Aspey, Watkins, Diesel; and I don't think that it's appropriate that it be disclosed.
. . . .
GRIFFEN: Just to make sure that I understand the issue, to restate it in perhaps slightly different form, [t]he [c]ourt has located from its in camera review of the AWD, Aspey, Watkins & Diesel, dissolution file what [t]he [c]ourt has identified as at least from its perspective Brady material.
THE COURT: Potential Brady material.
¶ 5 Judge Darrow entered a minute entry order declining to disqualify Griffen, finding: (1) that there is no "substantial risk" that any confidential information learned by Mother's AWD attorneys during the pendency of the dissolution matter would "materially advance" Father's position in the criminal case; and (2) that the State, not Mother, has a cognizable interest contrary to Father in the criminal proceeding and Mother therefore does not have "standing to intervene as a party to the action."
¶ 6 Nearly a year later, Mother, now represented by counsel, filed a "Motion to Disqualify or Recuse" Judge Darrow in which she alleged that Judge Darrow violated her constitutional rights under the Victims' Bill of Rights and failed to comply with several provisions of the Arizona Code of Judicial Conduct. Mother attached as an exhibit to her motion to disqualify Judge Darrow a copy of a motion to disqualify Griffen from representing Father, which she apparently filed contemporaneously with her motion to disqualify Judge Darrow.[3] The matter was assigned to the Honorable William T. Kiger for review. Judge Kiger held that no "constitutional, statutory, court rule or rule of conduct" would allow him to grant Mother's request that Judge Darrow be disqualified.
¶ 7 On May 5, 2010, Mother filed this petition for special action requesting that we vacate Judge Kiger's order and direct that Judge Darrow and Griffen be disqualified from further participation in the case. Because we conclude Mother lacks standing to seek special action relief, we dismiss her petition.

DISCUSSION
¶ 8 Mother contends that, contrary to Judge Kiger's ruling, she has standing as a "statutory victim" to intervene in Father's underlying criminal proceeding and move to disqualify the assigned trial judge and defense counsel. We disagree.
¶ 9 Pursuant to Arizona Revised Statutes (A.R.S.) section 13-4403(C) (2010), the parent of a minor crime victim may act as the victim's representative and "exercise all of the victim's rights on behalf of the victim." Thus, Mother, as the alleged victims' representative *1044 in the State's prosecution of Father, has limited standing to seek an order or bring a special action "to enforce any right or to challenge an order denying any right guaranteed to victims under the victims' bill of rights, [] any implementing legislation or court rules." A.R.S. § 13-4437(A) (2010).
¶ 10 As set forth in Article 2, Section 2.1, of the Arizona Constitution, the Victims' Bill of Rights protects a victim's right to justice and due process. More specifically, the Victims' Bill of Rights and its implementing legislation grant crime victims extensive rights, including the right to be notified of criminal proceedings at which a defendant has the right to be present and to attend those proceedings. Art. 2, § 2.1(A); see also A.R.S. §§ 13-4405 to -4427 (2010); Ariz. R.Crim. P. 39. Crime victims also have the right to refuse interviews and depositions and are granted certain privacy rights, including the right to appropriate safeguards to minimize contact with the defendant and members of his family, and to prevent the release of personally identifying information. Art. 2, § 2.1(A); see also A.R.S. §§ 13-4430, -4431, -4433, -4434 (2010); Ariz. R.Crim. P. 39.
¶ 11 Mother recognizes that, as a nonparty, see Lynn v. Reinstein, 205 Ariz. 186, 191, ¶ 15, 68 P.3d 412, 417 (2003) (concluding "that victims are not parties to a defendant's criminal case"), she cannot invoke the right of a party to move for a change of judge, see Ariz. R.Crim. P. 10.1(b) (permitting "a party" to file a motion requesting a change of judge for cause), or to move to disqualify counsel, see Smart Indus. Corp., Mfg. v. Superior Court, 179 Ariz. 141, 150, 876 P.2d 1176, 1185 (App.1994) (concluding a defendant in a personal injury lawsuit had a right to seek disqualification of plaintiff's counsel). She nonetheless contends that the Victims' Bill of Rights in combination with the Implementation Act and Rule 39 should be construed to permit her standing to exercise these rights. The insurmountable problem with this argument is that none of the provisions cited by Mother grant her the right as a crime victim to seek disqualification of the judge or counsel for one of the parties. Nor can such a right be fairly implied as a necessary attribute of a crime victim's right to justice and due process. We are cognizant that the Victims' Bill of Rights, the Implementation Act and court rules are liberally construed "to preserve and protect the rights to which crime victims are entitled." A.R.S. § 13-4418 (2010); see also Rule 39(b). But the duty to liberally construe a constitutional right or a statutory scheme requires judges "to interpret the law to insure that what the law gives is not withheld"; it does not permit judges to act with "free-handedness-largess" to alter, amend or expand the provision being construed. Nicholson v. Indus. Comm'n, 76 Ariz. 105, 109, 259 P.2d 547, 549 (1953). Accordingly, we conclude that Mother, although entitled to assert victims' rights on behalf of her children, lacked standing in her capacity as the children's representative to seek to remove the assigned trial judge or to move to disqualify defense counsel.
¶ 12 We now address whether Mother, as a former client of AWD, may nonetheless seek to have Griffen disqualified. Under the circumstances here, she may not. Because Mother is not a party in this matter, she would first have to be allowed to intervene pursuant to Arizona Rule of Civil Procedure 24 before litigating the issue of Griffen's representation of Father.[4] Mother failed to file such an application, and for that reason alone lacks standing to appeal the trial court's denial of her disqualification motion. See United States v. Kollintzas, 501 F.3d 796, 800 (7th Cir.2007) (requiring private party seeking to intervene in a criminal case to serve Rule 24 motion upon the parties).
¶ 13 Even if Mother had filed a timely application to intervene as of right pursuant to Rule 24(a), the trial court would have abused its discretion had it granted the motion *1045 because a private party is permitted to intervene in a criminal case, if at all, only in exceptional circumstances and for limited purposes. See People v. Ham, 734 P.2d 623, 627 (Colo.1987) ("In the absence of truly exceptional circumstances, ... the request of a third party to intervene in a criminal case should not be countenanced."); see also Harrelson v. United States, 967 F.Supp. 909, 912-13 (W.D.Tex.1997) (explaining that several federal circuit courts of appeal have permitted third parties to "intervene" in criminal proceedings in two limited situations: (1) media representatives seeking to challenge closed court proceedings or sealed documents, and (2) private parties seeking to protect their interests by limiting access to privileged or confidential information). Such circumstances do not exist here. Even assuming that the protection of Mother's attorney-client communications (see Ariz. R. Sup. Ct. 42, E.R. 1.6) might otherwise justify her intervention in a criminal case, cf. P.M. v. Gould, 212 Ariz. 541, 544-45, ¶¶ 13-14, 136 P.3d 223, 226-27 (App.2006) (finding victim had standing to assert a confidential communication privilege after the trial court ordered that her private counseling records be disclosed), both the State and defense counsel agree that AWD's case file is not subject to disclosure. Moreover, any right Mother might have to intervene in this case to ensure that confidential information relating to AWD's representation of her not be revealed would be limited to obtaining a protective order and would not extend so far as to permit her to seek to disqualify defense counsel.

CONCLUSION
¶ 14 Mother lacks standing either as a crime victim or as a former client of AWD to file a special action seeking disqualification of the judge and/or defense counsel. Therefore, we dismiss Mother's petition for special action relief.
CONCURRING: DIANE M. JOHNSEN, Presiding Judge and PATRICK IRVINE, Judge.
NOTES
[1] The dissolution decree was entered on April 2, 2009.
[2] From the submitted record, it is unclear how Butner came into possession of Mother's dissolution case file. As explained by Griffin, however, AWD provided Mother with a redacted copy of its case file when it concluded its representation of Mother in the divorce proceedings, and Mother in turn apparently provided her copy of the file to Butner.
[3] In her motion to disqualify Griffen, Mother contended that his representation of Father violates E.R. 1.9, which prohibits an attorney "who has formerly represented a client in a matter" from "represent[ing] another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing." Ariz. R. Sup.Ct. 42, E.R. 1.9(a). Pursuant to E.R. 1.10, knowledge of one lawyer is imputed to all lawyers associated in a firm and none of them may represent a client "when any one of them practicing alone would be prohibited from doing so by E.R.s 1.7 or 1.9." Ariz. R. Sup.Ct. 42, E.R. 1.10. Mother based her motion to disqualify Judge Darrow on what she perceived to be improper procedures used by the judge in considering the existence of a conflict, including his in camera review of AWD'S sealed case file without first obtaining her informed consent. See Ariz. R. Sup.Ct. 42, E.R. 1.6 (precluding a lawyer from "reveal[ing] information relating to the representation of a client unless the client gives informed consent").
[4] Rule 24(a) provides:

Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by the existing parties.