SUPREME COURT OF ARIZONA
En Banc

STATE OF ARIZONA,                    ) Arizona Supreme Court
                                     ) No.  CR-09-0171-AP
                      Appellee,      )
                                     ) Maricopa County
              v.                     ) Superior Court
                                     ) No.  CR2006-175408
MIKE PETER GALLARDO,                 )
                                     )
                      Appellant.     )
                                     ) **O P I N I O N**
_____)


Appeal from the Superior Court in Maricopa County
The Honorable Sally Schneider Duncan, Judge

**AFFIRMED**
_____

TERRY GODDARD, ARIZONA ATTORNEY GENERAL                      Phoenix
     By   Kent E. Cattani, Chief Counsel
          Criminal Appeals/Capital Litigation Section
          Susanne Bartlett Blomo, Assistant Attorney General
Attorneys for State of Arizona

DROBAN & COMPANY, PC                                         Anthem
     By   Kerrie M. Droban
Attorneys for Mike Peter Gallardo
_____

**B A L E S**, Justice

¶1      This mandatory appeal arises from Mike Peter Gallardo's conviction and death sentence for the murder of Rudy Padilla.  We have jurisdiction under Article 6, Section 5(3) of the Arizona Constitution and Arizona Revised Statutes ("A.R.S.") section 13-4031 (2010).

**FACTUAL AND PROCEDURAL BACKGROUND**

¶2      On December 9, 2005, Rudy Padilla was murdered at his parents' home in Phoenix.  Padilla's father returned from work and saw that a sliding glass door into the house had been broken.  He found his son's body in the master bedroom.  Padilla's wrists and ankles had been bound, a pillowcase had been tied over his head, and he had been shot once in the back of the head.  The bedroom was in disarray; jewelry and a revolver were missing.  Telephone records showed that Gallardo had called the Padilla home from his cell phone the day of the murder, and DNA profiles developed from evidence at the crime scene matched Gallardo's profile.  Neither Rudy nor his parents knew Gallardo.

¶3      Gallardo was indicted for first degree murder, burglary, and kidnapping.  After a mistrial for juror misconduct, a second jury was impaneled.  This jury convicted Gallardo on all counts.  In the aggravation phase, the jury found two aggravating factors: Gallardo had been previously convicted of a serious offense, *see* A.R.S. § 13‑751(F)(2) (2010), and the murder was especially cruel, *id.* § 13‑751(F)(6).  (Statutes are cited in their current version unless they have materially changed since the date of the offense.)  In the penalty phase, the jury determined Gallardo should receive a death sentence for the murder.  The trial court also sentenced

2

Gallardo to concurrent prison terms of 15.75 years for the burglary and kidnapping counts.

## DISCUSSION

¶4      Gallardo raises six issues on appeal.  For the reasons explained below, we affirm his convictions and sentences.

### A.  Mistrial After Juror Misconduct

¶5      Gallardo argues that the trial court erred in declaring a mistrial after several jurors prematurely discussed the evidence.

¶6      The decision to grant a mistrial rests within the sound discretion of the trial court.  *McLaughlin v. Fahringer*, 150 Ariz. 274, 277, 723 P.2d 92, 95 (1986).  If there is "manifest necessity" for the mistrial, the Double Jeopardy Clause does not bar retrial.  *Id.*  Manifest necessity may arise when juror impartiality is compromised by jurors discussing evidence before deliberations.  *Cf. Ross v. Petro*, 515 F.3d 653, 658 (6th Cir. 2008) (holding that state trial court exercised sound discretion in declaring mistrial based on manifest necessity where juror had engaged in misconduct)*; United States v. Gianakos*, 415 F.3d 912, 921 (8th Cir. 2005) (explaining that premature deliberation by a jury "is not a light matter" and that a court must carefully consider "[a] legitimate concern that a juror's impartiality is suspect").  Because curative instructions or other measures "will not necessarily remove the

3

risk of bias," the trial court "must have the power to declare a mistrial in appropriate cases." *Arizona v. Washington*, 434 U.S. 497, 513 (1978).

¶7 At the beginning of the guilt phase, the trial court admonished the jurors not to discuss the case "until all the evidence has been presented and [you] have retired to deliberate on the verdict. You therefore may not discuss the evidence amongst yourselves until you retire to deliberate on your verdict."

¶8 Upon learning that some jurors had prematurely discussed the evidence, the trial court individually questioned each of the sixteen impaneled jurors. The parties agreed that one juror (Juror 13) should be excused for an unrelated hardship. The trial court found that three other jurors should be excused for violating the admonition and not candidly responding to questions. The trial court also found that three other jurors had formed opinions about other jurors that would affect their deliberations. Striking all these jurors would not leave twelve to deliberate; striking only those who violated the admonition would leave no alternates for a capital case expected to last three months. The trial court also found it "highly likely" that four other jurors had violated the admonition despite having denied doing so.

¶9 Gallardo argues that less onerous sanctions were

4

available, all of the jurors stated they could remain fair and impartial, and he was satisfied with the jurors selected. But he agreed to the removal of two jurors (Jurors 11 and 13), and he offers no good reason to question the trial court's conclusions about the others. The trial court carefully considered Gallardo's interest in having the trial concluded by the originally impaneled jury and did not abuse its discretion in declaring a mistrial.

## B. *Batson* Challenge

¶10 Gallardo argues that the trial court erred in denying his challenges to the State's peremptory strikes of three minority jurors during selection of the second jury. We review for clear error. *State v. Roque*, 213 Ariz. 193, 203 ¶ 12, 141 P.3d 368, 378 (2006).

¶11 Excluding a potential juror based on race violates the Equal Protection Clause of the Fourteenth Amendment. *Batson v. Kentucky*, 476 U.S. 79, 89 (1986). *Batson* challenges require a three-step analysis: "(1) the party challenging the strikes must make a prima facie showing of discrimination; (2) the striking party must provide a race-neutral reason for the strike; and (3) if a race-neutral explanation is provided, the trial court must determine whether the challenger has carried its burden of proving purposeful racial discrimination." *State v. Cañez*, 202 Ariz. 133, 146 ¶ 22, 42 P.3d 564, 577 (2002). Whether the

5

justifications offered for striking a juror are pretexts for discrimination turns on the lawyer's credibility, and "the best evidence [of discriminatory intent] often will be the demeanor of the attorney who exercises the challenge." *Snyder v. Louisiana*, 552 U.S. 472, 477 (2008) (alteration in original).

¶12 The trial court did not clearly err in overruling Gallardo's *Batson* challenges. Although Gallardo made a prima facie showing of discrimination, the State offered an explanation for each strike "based on something other than the race of the juror." *Hernandez v. New York*, 500 U.S. 352, 365 (1991) (plurality opinion). The State struck one juror for hardship, another for her negative feelings toward police, and the last for her criminal history.

¶13 The trial court found that the reasons the State articulated were not pretexts and there was no pattern or practice of discrimination. Other minority jurors were ultimately selected for the panel, and "[a]lthough not dispositive, the fact that the state accepted other [minority] jurors on the venire is indicative of a nondiscriminatory motive." *Roque*, 213 Ariz. at 204 ¶ 15, 141 P.3d at 379 (internal quotation marks omitted) (second alteration in original). The trial court did not clearly err in overruling the *Batson* challenges.

## C. (F)(6) Aggravator

¶14 Gallardo argues that the State failed to present sufficient evidence to support the jury's finding that the murder was "especially cruel." He also argues that the jury instruction on the (F)(6) aggravator was unconstitutionally vague and improperly reduced the State's burden of proof.

### 1. Sufficiency of the Evidence

¶15 We determine whether substantial evidence supports the jury's finding, viewing the facts in the light most favorable to sustaining the jury verdict. *Id.* at 218 ¶ 93, 141 P.3d at 393. "Substantial evidence is such proof that reasonable persons could accept as adequate and sufficient to support a conclusion of defendant's guilt beyond a reasonable doubt." *Id.* (citations and internal quotation marks omitted).

¶16 Under A.R.S. § 13–751(F)(6), a first degree murder is aggravated when "[t]he defendant committed the offense in an especially heinous, cruel or depraved manner." "A finding of cruelty alone is sufficient to establish the [(F)(6)] aggravator." *State v. Morris*, 215 Ariz. 324, 341 ¶ 80, 160 P.3d 203, 220 (2007). To establish cruelty, the State must prove beyond a reasonable doubt that "the victim consciously experienced physical or mental pain prior to death, and the defendant knew or should have known that suffering would occur." *State v. Martinez*, 218 Ariz. 421, 436 ¶ 70, 189 P.3d 348, 363

7

(2008) (citation and internal quotation marks omitted).

¶17    The record contains substantial evidence that Rudy experienced mental anguish before death and that Gallardo knew or should have known that such suffering would occur. Rudy almost certainly was conscious when bound, as there is no reason to bind an unconscious person. *See State v. Lynch*, 225 Ariz. 27, 41 ¶ 79, 234 P.3d 595, 609 (2010); *State v. Djerf*, 191 Ariz. 583, 596 ¶ 49, 959 P.2d 1274, 1287 (1998); *see also State v. Bible*, 175 Ariz. 549, 604–05, 858 P.2d 1152, 1207–08 (1993) ("The fact that [the victim's] hands were bound indicates that she was conscious and tied-up to prevent struggling."). Ligature abrasions on Rudy's neck, wrists, and ankles indicate that the bindings were not loose.

¶18    Moreover, there is evidence that Rudy struggled against the ligatures attempting to free himself. *See Lynch*, 225 Ariz. at 41 ¶ 79, 234 P.3d at 609; *Djerf*, 191 Ariz. at 596 ¶ 51, 959 P.2d at 1287 (inferring mental anguish from contusions and abrasions on victim's wrists). Rudy's right hand was folded underneath him, not behind his back like his left arm. Rudy apparently had pulled his right wrist away from his left, almost freed his right hand, and pulled it in front of him.

¶19    That Rudy was bound hand and foot, a pillowcase was tied over his head, and he struggled to free himself also indicates he had time to suffer significant uncertainty as to

8

his fate. *See Lynch*, 225 Ariz. at 41 ¶ 79, 234 P.3d at 609; *State v. Ellison*, 213 Ariz. 116, 142 ¶ 120, 140 P.3d 899, 925 (2006) ("Mental anguish is established if the victim experienced significant uncertainty as to her ultimate fate." (citation and internal quotation marks omitted)). The record also supports the jury's conclusion that Gallardo knew or should have known that Rudy would suffer. *See Lynch*, 225 Ariz. at 41 ¶ 80, 234 P.3d at 609 (concluding that it was "surely foreseeable that [the victim] would suffer significant mental anguish while being bound to the chair").

¶20 The evidence supports the jury's finding that the murder was especially cruel.

### 2. F(6) Jury Instruction

¶21 Arizona's (F)(6) aggravator is facially vague but may be remedied by appropriate limiting instructions. *See Walton v. Arizona*, 497 U.S. 639, 654–56 (1990), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584, 589 (2002); *Ellison*, 213 Ariz. at 138 ¶ 96, 140 P.3d at 921. We have approved narrowing instructions for the "especially cruel" aggravating factor that require the jury to find that (1) "the victim was conscious during the mental anguish or physical pain" and (2) "the defendant knew or should have known that the victim would suffer." *State v. Tucker*, 215 Ariz. 298, 310 ¶ 31, 160 P.3d 177, 189 (2007) (citations omitted).

9

¶22    The trial court here gave the following (F)(6) instruction:

> Concerning this aggravating circumstance, all first-degree murders are to some extent cruel. However, this aggravating circumstance cannot be found to exist unless the State has proved beyond a reasonable doubt that the murder was "especially" cruel. "Especially" means "unusually great or significant."
>
> The term "cruel" focuses on the victim's pain and suffering. To find that the murder was committed in an "especially cruel" manner you must find that the victim consciously suffered physical or mental pain, distress or anguish prior to death. Mr. Gallardo must know or should have known that the victim would suffer.

¶23    The instruction contains the two "essential narrowing factors" identified in *Tucker* and is materially identical to instructions we have previously upheld. *See, e.g.*, *State v. Chappell*, 225 Ariz. 229, 237–38 ¶ 27 & n.6, 236 P.3d 1176, 1184–85 & n.6 (2010); *State v. Villalobos*, 225 Ariz. 74, 82 ¶ 31 & n.4, 235 P.3d 227, 235 & n.4 (2010). The trial court did not err in giving this instruction.

### D.   Victim Impact Evidence

¶24    Gallardo argues that victim impact statements by Rudy's parents were unduly prejudicial and denied him due process. He contends that he limited his mitigation evidence to avoid infusing "irrelevant emotions into the proceeding" and the parents' statements caused the jury to sentence him to death based on "raw emotion." He also argues that the victim impact

10

evidence was irrelevant to the mitigation presented and that, absent a curative instruction, the jury was improperly allowed to make "comparative judgments on the value of human life."

¶25     Arizona law generally allows victim impact evidence during the penalty phase to rebut mitigation. *See* Ariz. Const. art. II, § 2.1(A)(4) (entitling a victim to be heard at sentencing); A.R.S § 13-752(R) (allowing victim to present information during penalty phase about the murdered person and the impact of the murder on the victim and other family members).   "Victim impact evidence should not be allowed, however, if it is 'so unduly prejudicial that it renders the trial fundamentally unfair.'"  *State v. Dann*, 220 Ariz. 351, 369 ¶ 98, 207 P.3d 604, 622 (2009) (quoting *Payne v. Tennessee*, 501 U.S. 808, 825 (1991)), *cert. denied*, 130 S. Ct. 466 (2009).

¶26     Gallardo did not object to the victim impact evidence until after it was presented, when he moved for a mistrial.  The trial court's decision whether to grant a mistrial is reviewed for an abuse of discretion, *Dann*, 220 Ariz. at 363 ¶ 48, 207 P.3d at 616, as is the admission of victim impact evidence, *State v. Garza*, 216 Ariz. 56, 69 ¶ 60, 163 P.3d 1006, 1019 (2007).

¶27     In their statements, Rudy's parents spoke of Rudy's character and the impact of his murder upon their family.   Mr. Padilla ended his statement by playing the 911 call he made

11

after finding his son murdered. The Padillas' statements did not call for any specific sentence and were within the appropriate bounds of victim impact testimony — discussing only the kind of person Rudy was and how his death affected his family.

¶28     Gallardo argues that the statements were irrelevant to the "limited and truncated" mitigation presented. Admissibility of victim impact statements does not depend on the particular mitigation evidence presented by the defendant. Jurors may "consider mitigating circumstances, whether proved by the defendant or present in the record, in determining whether death is the appropriate sentence." *State ex rel. Thomas v. Granville (Baldwin)*, 211 Ariz. 468, 473 ¶ 18, 123 P.3d 662, 667 (2005). Even if victim impact statements are not offered to rebut any specific mitigating fact, they are "generally relevant to rebut mitigation" and thus admissible in the penalty phase. *Garza*, 216 Ariz. at 69 ¶ 60 n.12, 163 P.3d at 1019 n.12.

¶29     Although the jurors were moved by the statements, and some passed a tissue box, the statements were not "so unduly prejudicial" as to render the trial fundamentally unfair. *See State v. Glassel*, 211 Ariz. 33, 54 ¶ 86, 116 P.3d 1193, 1214 (2005). Moreover, the trial court appropriately instructed the jury that victim impact evidence could not be considered as an aggravating circumstance and could be considered "only for [the]

12

limited purpose" of rebutting mitigation. The trial court did not abuse its discretion in admitting victim impact statements or denying Gallardo's motion for mistrial.

¶30 Gallardo also argues that the trial court failed to instruct jurors (1) not to rely on the statements for "a purely emotional response," and (2) "not to make comparative judgments about the value of human lives." "We review de novo whether jury instructions adequately state the law." *Tucker*, 215 Ariz. at 310 ¶ 27, 160 P.3d at 189.

¶31 The cases Gallardo cites do not suggest the trial court's instructions were inadequate. *State v. Bocharski* states that the "trial judge appropriately instructed the jurors that they could consider the victim impact statement only to rebut the mitigation evidence." 218 Ariz. 476, 488 ¶ 53, 189 P.3d 403, 415 (2008). *State v. Carreon* notes that the "trial court cautioned the jury not to consider the impact statements as aggravation and not to be tainted by sympathy or prejudice." 210 Ariz. 54, 72 ¶ 93, 107 P.3d 900, 918 (2005).

¶32 Although this Court has approved jury instructions containing the language suggested by Gallardo, we have never held that such language is required. *See Dann*, 220 Ariz. at 369-70 ¶ 101, 207 P.3d at 622-23 (approving, but not requiring, instruction that cautioned jurors not to "rely upon the statements for a 'purely emotional response'" and "not to make

13

comparative judgments about the value of human lives"). The instructions here properly informed the jury of the limited purpose of the victim impact statements. We find no error.

**E. Prosecutorial Misconduct**

¶33 Gallardo argues that comments made by the State during its penalty phase opening statement and closing argument constituted prosecutorial misconduct and deprived him of a fair trial and due process.

¶34 We "will reverse a conviction for prosecutorial misconduct if (1) misconduct is indeed present; and (2) a reasonable likelihood exists that the misconduct could have affected the jury's verdict, thereby denying [the] defendant a fair trial." *State v. Velazquez*, 216 Ariz. 300, 311 ¶ 45, 166 P.3d 91, 102 (2007) (alteration in original) (internal quotation marks and citation omitted). The defendant must show that the offending statements were "so pronounced and persistent" that they "permeate[d] the entire atmosphere of the trial" and "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Morris*, 215 Ariz. at 335 ¶ 46, 160 P.3d at 214 (citations and internal quotation marks omitted); *see also State v. Newell*, 212 Ariz. 389, 402 ¶ 60, 132 P.3d 833, 846 (2006).

¶35 We separately "evaluate each instance of alleged misconduct, and the standard of review depends upon whether [the

14

defendant] objected." *Morris*, 215 Ariz. at 335 ¶ 47, 160 P.3d at 214. If Gallardo objected, we review for harmless error; if not, we review only for fundamental error. *See id.* "[E]ven if there [is] no error or an error [is] harmless and so by itself does not warrant reversal, an incident may nonetheless contribute to a finding of persistent and pervasive misconduct if the cumulative effect of the incidents shows that the prosecutor intentionally engaged in improper conduct and did so with indifference, if not specific intent, to prejudice the defendant." *Id.* (alteration in original) (citation and internal quotation marks omitted).

### 1. Reference to Gallardo's Prison Packet

¶36 Before the penalty phase, Gallardo filed a motion to limit the scope of rebuttal evidence. Gallardo stated that he intended to present only two categories of mitigation: expert testimony regarding the conditions of confinement in the maximum security units of Arizona prisons and testimony by members of his family about their affection for him and the impact a death sentence would have on them. Gallardo asked the court to preclude the State from asking witnesses about his "criminal history, institutional history, or any other past events," and in particular an incident involving a handcuff key, escape attempts, or the expert's conversations with Gallardo. The trial court granted the motion.

15

¶37      Gallardo contends that the prosecutor committed misconduct by suggesting in his opening statement that Gallardo's prison packet would illustrate his personal history. Gallardo, however, mischaracterizes the prosecutor's remarks. The prosecutor simply stated that Gallardo's expert had not reviewed the Arizona Department of Corrections' records for Gallardo, which had been previously admitted, but instead would talk about the treatment of inmates generally. By noting the limited scope of the expert's opinion, the prosecutor did not violate the trial court's ruling on the scope of rebuttal.

**2.   Reference to Gallardo's Childhood and Intelligence**

¶38      In his opening statement, the prosecutor stated that the jury would hear evidence regarding Gallardo's childhood. Gallardo objected and moved for a mistrial, arguing the statement violated the court's ruling on the scope of rebuttal. The trial court denied a mistrial but ruled that the prosecutor could not introduce evidence of Gallardo's childhood or intelligence unless the defense "opened the door" on those issues.

¶39      The prosecutor's statements about the anticipated evidence concerning Gallardo's childhood and intelligence did not violate the court's prior ruling on the motion in limine or otherwise constitute misconduct, given that the judge's ruling precluding such evidence came only after the opening statement.

16

Moreover, Gallardo later offered testimony by his sister about his family and argued in closing that his family members had been in the courtroom and the jury should consider that "[t]hey care about him." The defense did not offer evidence regarding Gallardo's intelligence, and the prosecutor did not comment on this issue again after the court's ruling.

¶40 Even if the comments by the prosecutor were improper, we would reverse only if Gallardo established "a 'reasonable likelihood' that the 'misconduct could have affected the jury's verdict.'" *Newell*, 212 Ariz. at 403 ¶ 67, 132 P.3d at 847 (quoting *State v. Atwood*, 171 Ariz. 576, 606, 832 P.2d 593, 623 (1992), *overruled on other grounds by State v. Nordstrom*, 200 Ariz. 229, 241 ¶ 25, 25 P.3d 717, 729 (2001)). "[A]ny improper comments must be so serious that they affected the defendant's right to a fair trial." *Id.* (citation omitted). The preliminary and final jury instructions noted that "[t]he attorneys' remarks, statements, and arguments are not evidence, but are intended to help you understand the evidence and apply the law." Presuming that jurors follow the court's instructions, *id.* at ¶ 68 (citation omitted), we conclude that any possible prejudice from the prosecutor's statements was cured by the trial court's instructions.

### 3. Comparison of Victim and Gallardo

¶41 In closing argument, Gallardo argued that a life

17

sentence was "sufficient punishment" given the "severe restriction" and "isolat[ion]" of prison. In response, the prosecutor said that maximum security inmates are allowed to watch television, receive magazines, make phone calls, and see visitors. Noting that victim impact statements could rebut mitigation, the prosecutor then said, "Do you think [Rudy's father is] going to be able to call his son, Rudy . . .." The defense objected to the comparison between Gallardo and the victim, and the trial court sustained the objection.

¶42 Even if the prosecutor's statements were improper, reversal is not required. *See Newell*, 212 Ariz. at 403 ¶ 67, 132 P.3d at 847. The trial court instructed the jurors "not to be swayed by mere sympathy not related to the evidence presented during this phase" and to disregard any question to which the judge sustained an objection. These instructions negated the effect of the prosecutor's statements. *See id.* at ¶ 68; *see also Morris*, 215 Ariz. at 336–37 ¶ 55, 160 P.3d at 215–16 ("Even if the prosecutor's comments were improper, the judge's instructions negated their effect.").

### 4. Reference to Mitigation Witness's Fees

¶43 In the penalty phase, Gallardo presented expert testimony from a retired corrections director about the conditions of maximum security facilities in Arizona. During cross examination, the prosecutor elicited testimony concerning

18

the expert's fees and potential bias. During closing argument, the prosecutor characterized this testimony as an inconsistent statement, Gallardo objected to the argument as misleading, and the trial court sustained the objection. The prosecutor persisted with the line of argument and the trial court twice sustained further objections.

¶44 A prosecutor should not repeat an argument after it has been the subject of a sustained objection. *Cf. Pool v. Superior Court in and for Pima County*, 139 Ariz. 98, 104 n.7, 677 P.2d 261, 267 n.7 (1984) (noting that repetition of questions to which objection has been sustained is misconduct); *In re Gustafson*, 650 F.2d 1017, 1020 (9th Cir. 1981) (noting that attorney's disregard of court's limits on permissible argument constituted misbehavior for purposes of federal contempt statute). Although the repeated statements by the prosecutor were improper, Gallardo's objections were sustained and the trial court instructed the jury to "disregard questions . . . that were withdrawn or to which objections were sustained." Again, because "we presume jurors follow the court's instructions," *Newell*, 212 Ariz. at 403 ¶ 68, 132 P.3d at 847, any prejudice that may have resulted from the prosecutor's argument was cured by the trial court's instructions.

### 5. Misstatement of the Law

¶45     Gallardo further claims that it was improper for the prosecutor to suggest in closing that the jurors must vote for death if they found no mitigation.  We have previously rejected this argument: "Under our sentencing scheme . . . given the findings of one or more aggravators, a juror must vote to impose a sentence of death if he or she determines there is no mitigation at all or none sufficiently substantial to warrant a sentence of less than death."  *Tucker*, 215 Ariz. at 318 ¶ 74, 160 P.3d at 197.

### 6.   Cumulative Effect

¶46     Gallardo argues that even if no single incident of misconduct warrants reversal, the deliberate and persistent conduct of the prosecutor deprived him of a fair trial.  We consider whether "persistent and pervasive" misconduct occurred and whether the "cumulative effect of the incidents shows that the prosecutor intentionally engaged in improper conduct and did so with indifference, if not a specific intent, to prejudice the defendant."  *Morris*, 215 Ariz. at 339 ¶ 67, 160 P.3d at 218 (citation and internal quotation marks omitted).

¶47     The record does not suggest pervasive prosecutorial misconduct that deprived Gallardo of a fair trial.

### F.   Constitutionality of Burden of Proof at Sentencing

¶48     Gallardo argues that Arizona's death penalty scheme violates the Eighth and Fourteenth Amendments because it does

not require the State to prove beyond a reasonable doubt that mitigating circumstances, once proved by the defendant, are not sufficiently substantial to call for leniency. We rejected this argument in *State v. Moore*, 222 Ariz. 1, 20 ¶¶ 110–13, 213 P.3d 150, 169, *cert. denied*, 130 S. Ct. 747 (2009).

## G.  Review of the Death Sentence

¶49    Because the murder occurred after August 1, 2002, we "determine whether the trier of fact abused its discretion in finding aggravating circumstances and imposing a sentence of death." A.R.S. § 13-756(A). We conduct this review even if, as here, the defendant does not argue that the jury's verdict was an abuse of discretion. *Morris*, 215 Ariz. at 340 ¶ 76, 160 P.3d at 219. A decision is not an abuse of discretion if there is "any reasonable evidence in the record to sustain it." *Id.* at 341 ¶ 77, 160 P.3d at 220 (citation and internal quotation marks omitted)

### 1.  Aggravating Circumstances

¶50    The jury found two aggravating circumstances: Gallardo had been previously convicted of a prior serious offense, *see* A.R.S. § 13-751(F)(2), and the murder was especially cruel, *see id.* § 13-751(F)(6). As discussed, there is sufficient evidence to support the jury's finding that Gallardo committed the murder in an especially cruel manner. The jury also properly found that Gallardo had previously been convicted of a serious offense

21

based on evidence of his prior convictions for armed robbery and burglary.

## 2. Death as the Appropriate Sentence

¶51    Once the jury finds one or more aggravating factors, each juror must individually determine whether death is the appropriate penalty. *See* A.R.S. § 13-751(C) (stating that "[e]ach juror may consider any mitigating circumstance found by that juror in determining the appropriate penalty"); *see also* *Baldwin*, 211 Ariz. at 473 ¶ 21, 123 P.3d at 667. We will not reverse the jury's decision if "any reasonable jury could have concluded that the mitigation established by the defendant was not sufficiently substantial to call for leniency." *Morris*, 215 Ariz. at 341 ¶ 81, 160 P.3d at 220.

¶52    Gallardo presented evidence about the impact of execution on his family and the general conditions of confinement in Arizona's maximum security facilities. A reasonable juror could conclude that the mitigation presented was not sufficiently substantial to call for leniency. *See* *State v. Harrod*, 200 Ariz. 309, 319 ¶ 54, 26 P.3d 492, 502 (2001) (minimal weight given to family support), *vacated on other grounds*, 536 U.S. 953 (2002).

## H. Issues Preserved for Federal Review

¶53    To avoid preclusion, Gallardo raises twelve additional constitutional claims that he states have been rejected in

22

previous decisions by the United States Supreme Court or this Court. The attached appendix lists the claims raised by Gallardo and the decisions he identifies as rejecting them.

**CONCLUSION**

¶54     We affirm Gallardo's convictions and sentences.


_____
                 W. Scott Bales, Justice

CONCURRING:


_____
Rebecca White Berch, Chief Justice


_____
Andrew D. Hurwitz, Vice Chief Justice


_____
A. John Pelander, Justice


_____
Michael D. Ryan, Justice (Retired)

**Appendix**

Gallardo raises twelve issues to preserve them for federal appeal. This Appendix lists his claims and the decisions he identifies as rejecting them.

(1)    Arizona's statutory scheme for considering mitigating evidence is unconstitutional under the Eighth and Fourteenth Amendments because it limits consideration of mitigating evidence to that proven by a preponderance of the evidence. *State v. McGill*, 213 Ariz. 147, 161 ¶ 59, 140 P.3d 930, 944 (2006).

(2)    Gallardo's death sentence is in violation of his rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments and the Arizona Constitution because the State failed to allege the aggravating factors that made the defendant death eligible in the grand jury indictment. *McKaney v. Foreman ex rel. County of Maricopa*, 209 Ariz. 268, 273 ¶ 23, 100 P.3d 18, 23 (2004).

(3)    Application of the new death penalty law to Gallardo constitutes an impermissible *ex post facto* application of the law. *State v. Ring*, 204 Ariz. 534, 547 ¶¶ 23–24, 65 P.3d 915, 928 (2003).

(4)    Gallardo's rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments and under the Arizona Constitution were violated by the admission of victim impact evidence at the penalty phase of the trial. *Lynn v. Reinstein*, 205 Ariz. 186, 191 ¶ 16, 68 P.3d 412, 417 (2003).

(5)    The trial court improperly omitted penalty phase instructions that the jury could consider mercy or sympathy in evaluating the mitigation evidence and in determining whether to sentence the defendant to death. *State v. Carreon*, 210 Ariz. 54, 70–71 ¶¶ 81–87, 107 P.3d 900, 916–17 (2005).

(6)    The death penalty is cruel and unusual punishment. *State v. Harrod*, 200 Ariz. 309, 320 ¶ 59, 26 P.3d 492, 503 (2001), *vacated on other grounds*, 536 U.S. 953 (2002).

(7) The death penalty is arbitrarily imposed in violation of Gallardo's due process rights under the Fourteenth Amendment and under the Arizona Constitution. *State v. Beaty*, 158 Ariz. 232, 247, 762 P.2d 519, 534 (1988).

(8) The prosecutor's discretion to seek the death penalty unconstitutionally lacks standards. *State v. Sansing*, 200 Ariz. 347, 361 ¶ 46, 26 P.3d 1118, 1131 (2001), *vacated on other grounds*, 536 U.S. 954 (2002).

(9) The death penalty in Arizona has been applied in a manner that discriminates against poor, young, and male defendants in violation of the Arizona Constitution. *Sansing*, 200 Ariz. at 361 ¶ 46, 26 P.3d at 1131.

(10) The absence of proportionality review by Arizona courts of a defendant's death sentence is unconstitutional under the Fifth, Eighth, and Fourteenth Amendments and Article 2, Section 15 of the Arizona Constitution. *Harrod*, 200 Ariz. at 320 ¶ 65, 26 P.3d at 503.

(11) Arizona's death penalty statute unconstitutionally presumes that death is the appropriate sentence. *State v. Miles*, 186 Ariz. 10, 19, 918 P.2d 1028, 1037 (1996).

(12) Execution by lethal injection is cruel and unusual punishment. *State v. Van Adams*, 194 Ariz. 408, 422, 984 P.2d 16, 30 (1999).