IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

STATE OF ARIZONA
*Appellee,*

*v.*

JULIO PEDROZA-PEREZ,
*Appellant.*

No. CR 15-0312-PR
Filed August 9, 2016

Appeal from the Superior Court in Pima County
The Honorable Christopher C. Browning, Judge
No. CR20132784-001

Memorandum Decision of the Court of Appeals, Division Two
No. 2 CA-CR 2014-0168
Filed August 12, 2015
**VACATED AND REMANDED**

COUNSEL:

Mark Brnovich, Arizona Attorney General, John R. Lopez IV, Solicitor General, Jennifer M. Perkins (argued), Assistant Solicitor General, Joseph T. Maziarz, Section Chief Counsel, Amy Pignatella Cain, Assistant Attorney General, Criminal Appeals Section, Tucson, Attorneys for State of Arizona

Steven R. Sonenberg, Pima County Public Defender, Rebecca A. McLean (argued), Assistant Public Defender, Tucson, Attorneys for Julio Pedroza-Perez

JUSTICE BRUTINEL authored the opinion of the Court, in which CHIEF JUSTICE BALES, VICE CHIEF JUSTICE PELANDER, and JUSTICES TIMMER and BOLICK joined.

JUSTICE BRUTINEL, opinion of the Court:

¶1      In this marijuana-smuggling case, Julio Pedroza-Perez notified the court before trial that he intended to raise a duress defense by

testifying that armed smugglers had forced him to carry the drugs. Reasoning that Pedroza-Perez might change his mind about testifying, the trial court precluded him from mentioning the duress defense or his related anticipated testimony in his opening statement. We hold that the trial court erred in so limiting Pedroza-Perez's opening statement, and therefore vacate the court of appeals' decision and remand to allow that court to consider whether the error was harmless.

## I.     BACKGROUND

¶2          In June 2013, two "coyote" smugglers led Pedroza-Perez and two others through the desert from Mexico into Arizona. The group met two more smugglers who gave them several bales of marijuana to carry. Later, Border Patrol agents and sheriff's deputies spotted the group. When the officers approached, however, they found only Pedroza-Perez, sitting under a tree with several backpacks containing bales of marijuana. The others escaped. Pedroza-Perez was arrested and charged with importation of marijuana, transportation of marijuana for sale, and possession of drug paraphernalia.

¶3          Pedroza-Perez gave notice of a duress defense. The State moved in limine to preclude the defense on the grounds that it was "not supported by the facts." The defense countered that Pedroza-Perez would testify at trial that armed men had forced him to carry the marijuana. After a hearing, the trial court precluded Pedroza-Perez from raising the duress defense or describing any anticipated duress-related testimony in his opening statement. If Pedroza-Perez testified at trial, the court ruled, then the defense could argue duress in closing.

¶4          Before trial, Pedroza-Perez moved for clarification of the trial court's ruling. In support, he filed a sworn affidavit stating that he had crossed the border with the help of coyote smugglers, whom he agreed to pay upon reaching Phoenix. After crossing the border, he averred, the armed smugglers seized his possessions and threatened to harm him or his family if he did not carry the marijuana. Pedroza-Perez again sought to include his duress defense and the supporting facts in his opening statement. The trial court reiterated its ruling, finding that the only evidence of duress would come from Pedroza-Perez's own testimony and that he could decline to testify, leaving the defense without any support. As a result, the court ruled, "unless and until this issue is established in the

record by testimony, counsel will not be permitted to suggest, argue, claim or otherwise advise the jury of Mr. Pedroza-Perez's claim of duress."

¶5          Complying with the court's order, the defense did not mention duress in its opening statement, stating only that the State's witnesses were not "present for the other half of the story." Pedroza-Perez testified consistent with the facts outlined in his affidavit. Defense counsel argued duress in closing argument, and the trial court instructed the jury on the duress defense. The jury found Pedroza-Perez guilty of transportation of marijuana and possession of drug paraphernalia but acquitted him on the importation charge. Pedroza-Perez was sentenced to prison and timely appealed.

¶6          The court of appeals affirmed. *State v. Pedroza-Perez*, 2 CA-CR 2014-0168, at *3 ¶ 12 (Ariz. App. Aug. 12, 2015) (mem. decision). It found that although Pedroza-Perez produced an affidavit in support of the duress defense and avowed that he would testify, the trial court acted within its discretion in determining that "such assertion lacks significance . . . because [he] can change his mind at any time and decide not to testify." *Id.* ¶ 11 (quoting the trial court ruling). This ruling, the court of appeals found, was consistent with prior cases indicating that opening statements should not include "statements which will not or cannot be supported by proof." *Id.* ¶¶ 10–11 (quoting *United States v. Dinitz*, 424 U.S. 600, 612 (1976) (Burger, C.J., concurring) and citing *State v. Bible*, 175 Ariz. 549, 601–02, 858 P.2d 1152, 1204–05 (1993)).

¶7          Because the proper scope of an opening statement is a recurring issue of statewide importance, we granted review. In its briefing before this Court, the State conceded that the trial court erred in precluding defense counsel from mentioning in opening statement the duress defense and Pedroza-Perez's anticipated testimony, but argued that the error was harmless. We have jurisdiction pursuant to article 6, section 5(3), of the Arizona Constitution and A.R.S. § 12–120.24.

## II.     ANALYSIS

¶8          We review a trial court's ruling on the content of opening statements for abuse of discretion. *State v. Prewitt*, 104 Ariz. 326, 333, 452 P.2d 500, 507 (1969). "An error of law committed in reaching a discretionary conclusion may, however, constitute an abuse of discretion." *Busso–*

*Estopellan v. Mroz*, 238 Ariz. 553, 554 ¶ 5, 364 P.3d 472, 473 (2015) (citing *State v. Wall*, 212 Ariz. 1, 3 ¶ 12, 126 P.3d 148, 150 (2006)). We agree with the parties that the trial court erred in limiting Pedroza-Perez's opening statement.

**¶9** A defendant is entitled to make an opening statement. Ariz. R. Crim. P. 19.1(a). "[T]he purpose of an opening statement is to advise the jury of facts upon which the [defendant] would rely in his defense" and to give the jurors "a general picture of the facts and the situations, so that they will be able to understand the evidence." *State v. Burruell*, 98 Ariz. 37, 40, 42, 401 P.2d 733, 736, 737 (1965). In other words, the opening statement affords the defense an opportunity to "explain the defense theory of the case, to provide the jury an alternative interpretive matrix by which to evaluate the evidence, and to focus the jury's attention on the weaknesses of the government's case." *Oesby v. United States*, 398 A.2d 1, 5 (D.C. 1979).

**¶10** Although a defendant enjoys "considerable latitude" in making an opening statement, *Burruell*, 98 Ariz. at 40, 401 P.2d at 736, it should not include "statements which will not or cannot be supported by proof." *Dinitz*, 424 U.S. at 612 (Burger, C.J., concurring); *see Bible*, 175 Ariz. at 601–02, 858 P.2d at 1204–05.

**¶11** Here, Pedroza-Perez notified the trial court and the prosecution that he planned to testify to facts sufficient to support his duress defense and submitted an affidavit previewing that testimony. Both courts below correctly observed that Pedroza-Perez could have changed his mind and decided not to take the stand because a criminal defendant has an absolute right to testify or not testify. *State v. Whitaker*, 112 Ariz. 537, 542, 544 P.2d 219, 224 (1975); *see* U.S. Const. amend. V; *see also* A.R.S. § 13–117. The possibility that Pedroza-Perez might have later elected not to testify, however, was not a proper reason to bar him from telling the jury about his anticipated evidence of duress—his central explanatory theme and only defense—in the opening statement.

**¶12** Specific evidence may be referenced in the opening statement as long as the proponent has a good faith basis for believing the proposed evidence exists and will be admissible. *See State v. Bowie*, 119 Ariz. 336, 339–40, 580 P.2d 1190, 1193–94 (1978) (ruling that prosecutor's comments about anticipated testimony of four-year old child were not improper when prosecutor had good faith belief that child, whose competency had not been

determined, would be allowed to testify). The trial court may require a party to identify the good faith basis for the proffered evidence, *see Dinitz*, 424 U.S. at 603, but may not impose a more exacting standard for inclusion in the opening statement. Opening statements are predictions about what the evidence will show. At trial, things do not always go as planned. Witnesses sometimes fail to appear, recant, change their stories, or even die before trial.

¶13 The trial process itself accounts for the risk that the trial evidence will not match the opening statements. As occurred here, trial courts instruct jurors that evidence is presented through testimony or exhibits, and that opening statements and arguments of counsel are not evidence. *State v. Manuel*, 229 Ariz. 1, 6 ¶ 24, 270 P.3d 828, 833 (2011). We presume that jurors follow this instruction and such an instruction typically cures any potential prejudice. *Id.*; *State v. Gallardo*, 225 Ariz. 560, 569 ¶ 40, 242 P.3d 159, 168 (2010). In addition, a defendant who fails to produce evidence at trial to support claims made during the opening statement generally hurts only himself. *See Rutledge v. State*, 41 Ariz. 48, 55–56, 15 P.2d 255, 258 (1932). He loses credibility with the jury, cannot refer to the evidence available in closing argument, and will not be entitled to a jury instruction based on the evidence.

¶14 This case does not present the situation found in *Dinitz* and *Bible*, in which a party leveled accusations that were not supported by anticipated evidence—that is, "statements which [would] not or [could not] be supported by proof." *Dinitz*, 424 U.S. at 612; *Bible*, 175 Ariz. at 602, 858 P.2d at 1205 (With regards to the prosecutor's opening statement claiming that the victim was tortured, the court found "[t]here was no direct evidence" and "the record does not indicate that any such evidence was anticipated."). During opening statements in *Dinitz*, defense counsel accused a government witness of attempted extortion even though it was "apparent that [counsel] had no information linking [the witness] to the extortion attempt." *Id.* at 603. During opening statements in *Bible*, the prosecutor speculated that the defendant's alleged victim was "perhaps tortured," but "[t]here was no direct evidence that the victim was tortured, and the record does not indicate that any such evidence was anticipated when opening statements were made." 175 Ariz. at 601–02, 858 P.2d at 1204–05. The present case is plainly distinguishable. By proffering an affidavit detailing his anticipated testimony that he was forced at gunpoint to carry marijuana, Pedroza-Perez established a good faith basis for his

duress defense. He did not speculate or make allegations unsupported by anticipated evidence. Rather, he properly sought to present an opening statement that included his good faith predictions about the evidence he planned to introduce in support of his defense.

¶15 Pedroza-Perez argues that the trial court's error was structural and, thus, mandates reversal. *See State v. Valverde*, 220 Ariz. 582, 585 ¶ 10, 208 P.3d 233, 236 (2009) ("If an appellate court finds structural error, reversal is mandated regardless of whether an objection is made below or prejudice is found. If error is structural, prejudice is presumed."). We disagree. Structural errors, as opposed to more typical trial errors, "deprive defendants of basic protections without which a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence." *State v. Ring* (*Ring III*), 204 Ariz. 534, 552 ¶ 45, 65 P.3d 915, 933 (2003) (internal quotation marks omitted) (quoting *Neder v. United States*, 527 U.S. 1, 8–9 (1999)). In other words, structural errors are those that "affect the entire conduct of the trial from beginning to end, and thus taint the framework within which the trial proceeds." *State v. Henderson*, 210 Ariz. 561, 565 ¶ 12, 115 P.3d 601, 605 (2005) (internal quotation marks omitted) (quoting *State v. Anderson*, 197 Ariz. 314, 323 ¶ 22, 4 P.3d 369, 378 (2000)).

¶16 Here, the trial court's restriction on Pedroza-Perez's opening statement did not deprive him of the basic protections of a criminal trial or affect its basic framework. Pedroza-Perez was not completely barred from presenting his duress defense to the jury. He testified in support of the defense, his counsel argued duress in closing, and the trial court instructed the jury on the elements of duress. As a result, the court's error was non-structural, subject to harmless error review.

¶17 Having agreed that the trial court erred, both parties urge us to decide whether that error was harmless. But because the court of appeals did not reach that issue, we remand for that court to determine whether, "in light of all of the evidence," the State "can establish beyond a reasonable doubt that the error did not contribute to or affect the verdict." *Valverde*, 220 Ariz. at 585 ¶ 11, 208 P.3d at 236 (internal quotation marks omitted) (quoting *Bible*, 175 Ariz. at 588, 858 P.2d at 1191).

### III.    CONCLUSION

**¶18**        We vacate the court of appeals' decision and remand to allow that court to consider whether the trial court's error in limiting Pedroza-Perez's opening statement was harmless beyond a reasonable doubt.