NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

RAYPHE DANIEL NICHOLS, *Appellant.*

No. 1 CA-CR 16-0070
No. 1 CA-CR 16-0071
FILED 8-10-2017

Appeal from the Superior Court in Maricopa County
No. CR2012-150435-001
No. CR2015-110851-001
The Honorable Erin Otis, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Linley Wilson
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Lawrence H. Blieden
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Presiding Judge Kent E. Cattani delivered the decision of the Court, in which Judge Jon W. Thompson and Judge Paul J. McMurdie joined.

---

**C A T T A N I**, Judge:

¶1   Rayphe Daniel Nichols appeals his convictions and sentences for two counts of aggravated assault and one count of burglary in the second degree, and the resultant revocation of probation imposed for two convictions of threatening and intimidating. For reasons that follow, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

¶2   In February 2015, Nichols broke through the locked door of a house in South Phoenix at 2 a.m. and attacked the residents, a man and a woman, while they attempted to guard the bedroom where their infant daughter was sleeping. During the struggle, the man hit Nichols in the head several times with a baseball bat. Nichols briefly separated himself after being hit, but then again attempted to grab the man and attack him. The man repeatedly yelled at Nichols to get out of the house, but Nichols would not leave. The man sustained scratches to his arm and swollen fingers from hitting Nichols, and the woman sustained a bump on her forehead. Nichols sustained severe head injuries. When the man called out to a neighbor for help, Nichols fled. A responding officer followed Nichols to a parking lot near the house, where Nichols collapsed.

¶3   Nichols was charged with burglary in the second degree and two counts of aggravated assault. A jury convicted Nichols as charged, and found as aggravating circumstances that (1) he had a felony conviction within ten years of the offense, (2) he was on felony probation at the time of this offense, and (3) the offense caused physical, emotional, or financial harm to the victim.

¶4   At sentencing, the court found Nichols had violated the terms of his probation imposed after he pleaded guilty to two counts of threatening and intimidating in 2012. The court also found that Nichols had eight prior felony convictions, and used two of the prior convictions to enhance his sentences for the current offenses. The court revoked probation

in the 2012 case and sentenced Nichols to concurrent terms of 1.5 years for those offenses. The court sentenced Nichols to concurrent terms totaling 15 years for the current offenses, to be served consecutive to the sentence in the 2012 case. Nichols timely appealed, and this court consolidated the 2012 and 2015 cases. We have jurisdiction under Arizona Revised Statutes ("A.R.S.") § 13-4033.[1]

## DISCUSSION

### I.    Purported Prosecutorial Misconduct.

¶5        Nichols raises several claims of prosecutorial misconduct. Because Nichols failed to object to any of the alleged misconduct at trial, he bears the burden of establishing fundamental, prejudicial error. *See State v. Henderson*, 210 Ariz. 561, 567–68, ¶¶ 19–20 (2005).

¶6        "To prevail on a claim of prosecutorial misconduct, a defendant must demonstrate that the prosecutor's misconduct so infected the trial with unfairness as to make the resulting conviction a denial of due process." *State v. Morris*, 215 Ariz. 324, 335, ¶ 46 (2007) (citation omitted). "The misconduct must be so pronounced and persistent that it permeates the entire atmosphere of the trial." *Id.* (citation omitted). Prosecutorial misconduct can be a basis for reversing a conviction, but only if (1) the prosecutor's conduct was improper and (2) there is a reasonable likelihood that the misconduct may have affected the verdict, and thereby denied the defendant a fair trial. *Id.*

### A.    Voir Dire.

¶7        Nichols argues that during voir dire, the prosecutor improperly asked "stake out" questions designed to identify prospective jurors who would be "inclined to nullify the law because of a belief that it would be wrongly applied to a defendant who suffered a traumatic brain injury during the commission of the offense." Although none of the jurors who responded to this line of questioning were empaneled, Nichols argues that the prosecutor's questions improperly conditioned the remaining jurors to see the evidence in a certain way before the introduction of any evidence.

---

[1]        Absent material revisions after the relevant date, we cite a statute's current version.

¶8            The prosecutor posed the following question to the panel of prospective jurors:

> You will hear during the course of trial that the victim--after the defendant was in his house, the victim hit him in the head with a baseball bat while he was in his house, and the defendant had to go to the hospital and suffered an injury as a result of that.
>
> Given that bit of information, is there anyone who thinks, well, my goodness, you know, you get hit in the head with a baseball bat, that's enough.  Why are we here with criminal charges if he already suffered that much?
>
> Does anyone think that?  For the record, I'm not seeing any responses.
>
> Does anyone have a problem with that – Juror number 43?

¶9            When juror number 43 expressed some confusion, the prosecutor clarified that "[t]he allegation is the defendant went inside the home and while inside the home, the homeowner hit the defendant with the bat," emphasizing, however, that "this isn't evidence.  You'll have to hear the evidence from the stand."  After this juror again expressed confusion, the prosecutor again elaborated: "You will hear that the victim defended his home, and he caused a serious injury as a result.  Does anyone have a problem with that or think that, you know, that shouldn't be the law, you shouldn't be allowed to do that?"  And in response to questioning from another juror, the prosecutor stated: "My question is this, after seeing that the defendant suffered an injury, does anyone think like, I don't care what he did, legal or illegal, he had an injury that bad, I'm just going to walk him out the door because he's already suffered enough?  That's the question."

¶10            These questions were not improper.  They were designed to weed out jurors who could not follow the law because of the severe injuries Nichols suffered.  Thus, these questions were appropriately "directed to bases for challenge for cause or to information to enable the parties to exercise intelligently their peremptory challenges." *See* Ariz. R. Crim. P. 18.5(e).

¶11            The questions were not designed—as Nichols argues—"to condition the jury to the receipt of certain evidence or to a particular view of the evidence." *State v. McMurtrey*, 136 Ariz. 93, 99 (1983).  And although the prosecutor gave the jury a short preview of the relevant evidence, his

question was phrased in such a way to specifically avoid commenting on whether the defendant's conduct was legal. The prosecutor attempted to ascertain whether any of the jurors would be inclined not to follow the law because Nichols had "already suffered enough," and stopped short of asking the panel "to speculate or precommit to how [they] might vote based on any particular facts." *State v. Prince*, 226 Ariz. 516, 529, ¶ 35 (2011) (citation omitted). Given the unusual facts of this case in which there was a legitimate possibility that the jurors might be inclined to render a verdict based on sympathy for the defendant, the unobjected-to questions were not improper. *See Morgan v. Illinois*, 504 U.S. 719, 734 n.7 (1992) ("The process of voir dire is designed to cull from the venire persons who demonstrate that they cannot be fair to *either* side of the case.") (citation omitted).

¶12 Nichols points to the responses of some of the jurors as evidence of the impropriety of the prosecutor's questions. But the court appropriately intervened after the jurors demonstrated confusion, and reminded the panel that counsel's statements were not evidence, and the defendant "sits here innocent because we have not heard any testimony." The court struck for cause two prospective jurors (numbers 10 and 43) who stated they would be unable to presume Nichols's innocence, and none of the prospective jurors who expressed possible bias in response to this line of questioning were empaneled. On this record, any argument that the empaneled jury was tainted by the remarks by the stricken jurors is simply speculation. *See State v. Tison*, 129 Ariz. 526, 535 (1981) ("Unless there are objective indications of jurors' prejudice, we will not presume its existence.").

### B. Opening Statement.

¶13 Nichols argues that during opening statement, the prosecutor improperly played a 9-1-1 call and showed photographs of the victims' injuries, commenting that they were a "visual representation of Nichols' intent." Nichols acknowledges that this evidence was admitted at trial, but he argues that "this is another example of the prosecutor improperly dominating the course of the trial."

¶14 The unobjected-to opening statement did not result in error. Opening statements "orient jurors to the pertinent facts that would be presented and [] assist in their understanding of the evidence." *State v. Goudeau*, 239 Ariz. 421, 450, ¶ 94 (2016) (citing *State v. King*, 180 Ariz. 268, 278 (1994)). "Specific evidence may be referenced in the opening statement as long as the proponent has a good faith basis for believing the proposed evidence exists and will be admissible." *State v. Pedroza-Perez*, 240 Ariz. 114,

116, ¶ 12 (2016). Nichols does not argue that the prosecutor lacked a good faith basis for believing that the 9-1-1 call and the photographs were admissible, and Nichols offers no support for his claim that the prosecutor thereby "improperly dominat[ed] the course of the trial." And the prosecutor explained that the photographs of the broken door would be "crucial pieces of evidence" in determining whether Nichols had been invited into the house and what his intent was at the time. Under these circumstances, the prosecutor's use of the photographs and 9-1-1 call during opening statement was not improper.

### C.      Closing Argument.

¶15         Nichols asserts that the prosecutor improperly appealed to the sympathy of the jurors during closing argument by misstating the law and the facts, and by vouching for the State's witnesses. Generally, "prosecutors have wide latitude in presenting their closing arguments to the jury: excessive and emotional language is the bread and butter weapon of counsel's forensic arsenal, limited by the principle that attorneys are not permitted to introduce or comment upon evidence which has not previously been offered and placed before the jury." *State v. Jones*, 197 Ariz. 290, 305, ¶ 37 (2000) (citation omitted). In considering whether an argument constitutes misconduct, this court "looks at the context in which the statements were made as well as the entire record and [] the totality of the circumstances." *State v. Nelson*, 229 Ariz. 180, 189, ¶ 39 (2012) (citation omitted).

¶16         Nichols argues that the prosecutor improperly played on the jurors' fears by stating that everyone has the right to be secure in their home, by referring to photos of the "bloody mess" as "images you can't get out of your mind," and by linking his argument that motives are sometimes elusive to the inability to ascertain motives for freeway shootings or inappropriate touching of a child. It is improper for the prosecutor to appeal to the fears or passions of the jury. *See Morris*, 215 Ariz. at 337, ¶ 58. But these arguments were within the wide latitude afforded prosecutors in closing argument. Rather than an appeal to jurors' fears, this was simply part of an explanation of the State's theory of the case: that the victims' home was invaded in the early morning hours by Nichols, whose unexplained presence terrified them. The prosecutor's arguments, in context, were not improper.

¶17         Nichols argues the prosecutor misstated the law by stating that the victim could have shot Nichols dead "the second the defendant walked in the door," and by incorrectly referring to the burglary as

"burglary in the first degree." The prosecutor's comment that the victim could have shot Nichols the second he walked through the door was a fair statement of the law. *See* A.R.S. § 13-411(A), (C) (establishing that a person is justified in using deadly physical force if the person reasonably believes it to be immediately necessary to prevent commission of second-degree burglary); A.R.S. § 13-419(A) (affording a presumption of reasonableness if the person has reason to believe another person "has unlawfully or forcefully entered and is present in the person's residential structure"). And although the prosecutor mistakenly referred to "burglary in the first degree," the reference was of no consequence in light of the jury instructions and verdict form that correctly identified the charge as "burglary in the second degree." Thus the prosecutor's inadvertent (and unobjected-to) reference to a more serious burglary offense did not result in reversible error.

¶18 Nichols also asserts that the prosecutor misstated the facts by indicating that Nichols beat both victims. "The prosecutor is permitted to argue all reasonable inferences from the evidence, but cannot make insinuations that are not supported by the evidence." *Morris*, 215 Ariz. at 336, ¶ 51 (citation omitted). The prosecutor's argument was a reasonable inference from the evidence, which demonstrated that both the man and woman sustained injuries during the altercation.

¶19 Finally, Nichols argues that the prosecutor improperly vouched for the State's witnesses by indicating that (1) he doubted that defense counsel would suggest that Nichols did not enter or remain in the house; (2) he doubted that the jury could find an absence of criminal trespass, although it was the jury's call; (3) he was "not big on reading instructions because there's a lot of legalese"; and (4) apologizing for the aggravation hearing, referring to it as "this song and dance" that was the fault of the Arizona Supreme Court.

¶20 There are "two forms of impermissible prosecutorial vouching: (1) where the prosecutor places the prestige of the government behind its witness; [and] (2) where the prosecutor suggests that information not presented to the jury supports the witness's testimony." *King*, 180 Ariz. at 276–77 (citation omitted and alteration in original). Here, none of the cited arguments constituted vouching. The first three of these remarks were within the wide latitude afforded the prosecutor in closing arguments, and were linked to the evidence presented at trial. Nevertheless, it was improper for the prosecutor to characterize the aggravation hearing as "this song and dance" that was the fault of the Arizona Supreme Court. The prosecutor's attempt to apologize for holding the jurors over for this second

phase of trial belittled the proceeding and the jury. But the prosecutor presented evidence at the aggravation hearing and argued that the evidence at the hearing and at trial supported the aggravating factors. Moreover, the jurors had been instructed that counsel's arguments were not evidence, and that they should consider only evidence admitted in court in reaching their verdicts. Absent any indication in the record that the jury failed to heed these instructions, we presume the jury followed them. *See State v. Newell*, 212 Ariz. 389, 403, ¶ 68 (2006).

### D. Cumulative Error.

**¶21** Nichols's assertion of cumulative error fails because he has not established that "the prosecutor intentionally engaged in improper conduct and did so with indifference, if not specific intent, to prejudice the defendant," as necessary to reverse based on cumulative error. *See State v. Gallardo*, 225 Ariz. 560, 568, ¶ 35 (2010) (citation omitted).

## II. Claimed Errors in Jury Instructions.

**¶22** Nichols asserts that the superior court fundamentally erred by instructing the jury that his self-defense claim was limited to the aggravated assault charges, and that the victim's use of force was justified. He argues that "limiting Nichols' self-defense claims to just the aggravated assault charges was tantamount to the trial court stating that Nichols did not have a defense to the burglary charge," and "instructing the jury that the victim's use of force was justified singled out a particular factual aspect of the case which caused the jury to attach undue significance to it."

**¶23** Nichols has failed to demonstrate error, much less fundamental error. Self-defense was not a defense to the burglary charge. The State's theory of the case was that Nichols entered or remained in the victim's home with the intent to commit aggravated assault, and the court so instructed the jury. The justification of self-defense by its own terms applies only to a person "threatening or using physical force against another." A.R.S. § 13-404. Here, the jury was instructed to convict Nichols if they found he had entered or remained in the victims' home "with the intent to commit the assault." A self-defense instruction was thus unwarranted under the facts of this case because the offense of burglary was completed when Nichols entered the house with the requisite intent, regardless of any subsequent use of physical force. Nor did the superior court's instruction limiting self-defense to the aggravated assault charges suggest to the jury that Nichols had no defense to the burglary charge.

Nichols was free to argue any defense to the burglary charge supported by the evidence, including the insufficiency of the State's evidence.

¶24      Furthermore, it was appropriate for the court to instruct the jury that the victim's use of force was justified. A person's use of physical force is presumed reasonable against an unlawful intruder in the person's home. A.R.S. § 13-419(A), (B). The justification instruction was warranted in this case because defense counsel repeatedly challenged the victim's use of force as excessive. And even if the instruction constituted an inappropriate comment on the evidence, it could not have constituted fundamental, prejudicial error because defense counsel conceded in settling jury instructions that the homeowner had not acted illegally and "could have shot [Nichols] dead," and reiterated throughout his closing argument that the homeowner's conduct in defending himself was not at issue.

## CONCLUSION

¶25      For the foregoing reasons, we affirm Nichols's convictions and sentences for burglary and aggravated assault, and the resultant probation revocation and sentences in the 2012 case.

