NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

ANDREW RIVAS, *Appellant.*

No. 1 CA-CR 19-0542
FILED 1-14-2021

Appeal from the Superior Court in Maricopa County
No.  CR2018-005656-001
The Honorable Dewain D. Fox, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Casey Ball
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Kevin D. Heade
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Presiding Judge Randall M. Howe delivered the decision of the Court, in which Judge Kent E. Cattani and Judge Cynthia J. Bailey joined.

---

**H O W E**, Judge:

¶1          Andrew Rivas appeals his second-degree murder conviction and sentence. For the following reasons, we affirm.

### FACTS AND PROCEDURAL HISTORY

¶2          In August 2017, S.E. was drinking at a bus stop when Rivas, his wife, and his friend, Christopher Kemper, approached. S.E. spilled his beer and Kemper joked, "that's alcohol abuse." S.E. was offended and became belligerent and argumentative with him. S.E. followed Kemper around the bus stop until Kemper climbed on top of the bus stop to get away from him. After a couple minutes, Kemper got down from the bus stop and saw S.E. and Rivas wrestling with each other. Kemper and Rivas's wife decided to walk away.

¶3          While Rivas and S.E. were wrestling each other, one of them pulled out a knife. The State and Rivas disputed who had the knife first, but Rivas was carrying a bag of kitchen utensils. At some point, Rivas stabbed S.E. with the knife six times, once near his collarbone and five times in his back and neck, killing him. A husband and wife sitting in their car at a nearby intersection saw the stabbing. They called the police and then followed Rivas as he fled.

¶4          Rivas caught up with his wife and Kemper, wrapped the knife in a shirt, and dumped it in a trash can. Police found Rivas, his wife, and Kemper running and hiding between bushes and trees. They found the knife in the trash can after a bystander told them he had seen Rivas discard it.

¶5          The State charged Rivas with second-degree murder and alleged several aggravating circumstances, including that the offense involved the use of a dangerous instrument. While Rivas awaited trial, he made several recorded phone calls from jail. In one, he told his wife that "when we start going to trial, I'm going to have to be clean shaven" and

"you know pretend to be the innocent little puppy, you know, the scared little innocent puppy."

¶6        Before trial, the State disclosed S.E.'s gang membership identification card ("GMIC") and statements that he had previously made to police officers about his gang affiliation. The State then moved to preclude that evidence. Rivas argued that the evidence was admissible under Arizona Rules of Evidence 404(a) and 405(b). The court granted the State's motion, finding that the evidence was inadmissible as specific instances of conduct under Rule 405(b) because when Rivas stabbed S.E., he was unaware of the GMIC and the gang-related statements. The court also noted that evidence that S.E. was the initial aggressor was not an essential element of Rivas's self-defense claim. The court found, however, that if Rivas laid the proper foundation, he could admit the GMIC and gang-related statements under Rule 404(b) to corroborate his version of events. The court also permitted Rivas to introduce testimony about gang-related statements that S.E. had made at the time of the offense, if he laid the proper foundation.

¶7        At the start of jury selection, four African Americans were in the jury venire: Jurors No. 10, No. 12, No. 16, and No. 41. The court struck Juror No. 10 for cause on its own motion without objection. The prosecutor moved to strike Juror No. 41 for cause because of financial hardship and the trial court granted the motion after Rivas took no position. Rivas moved to strike Juror No. 16 for cause. The prosecutor objected and the court denied Rivas's for cause strike.

¶8        When the parties exercised their peremptory strikes, Rivas struck Juror No. 16 and the prosecutor struck Juror No. 12, the last remaining African American juror. Rivas challenged the strike under *Batson v. Kentucky*, 476 U.S. 79 (1986), and the prosecutor responded that

> [t]he reason we struck him is two-fold. When he explained that situation of his friend shooting up a gas station in Tempe, he described, one, how he was close to him and that he talked about how all of it was on film and camera, and he repeatedly indicated that. Our murder is not on film or camera. He said he could be fair and impartial because of this film, and it was taken in a gas station and gas stations have everything.
>
> So our concern is obviously he has this idea of what a murder should be like, and so we struck him for that reason because he has a very clear idea from his experience of what

3

he should be seeing to prove someone guilty. And obviously there are other ways to prove someone guilty.

He's also one of the very younger individuals in this and so we were trying to get rid of some of the individuals. He also only worked for FedEx for four months, so not a lot of life experience. He also indicated he only has four years of education on his juror notes.

The court found that the reasons were race-neutral, and Rivas did not argue that they were pretextual. The court therefore found that Rivas had not met his burden of proving purposeful discrimination and denied the *Batson* objection.

¶9 At trial, the State played Rivas's jail call where he stated that he was going to "pretend to be the innocent little puppy." Rivas then sought under Rule 106 to play a portion of his conversation that took place a minute or so after his statement. In that portion, Rivas stated that he was not trying to kill S.E. and that he was just trying to defend himself, his wife, and Kemper. He further stated that he did not accept a plea agreement and was not going to accept the blame for defending himself and his wife because S.E. had tried to rob them while he was "drunk and high."

¶10 The trial court precluded Rivas from playing that portion of the jail call because it did not add context to his previous statement. The court allowed him to play another jail call where he stated that he was scared and thought he was going to die, that S.E. had pulled out a weapon and started attacking him first, that he felt the knife come close to his neck, and that "he did what he had to do to protect [them]."

¶11 The jury found Rivas guilty of second-degree murder and found that the State had proven that the offense involved a dangerous instrument as an aggravating circumstance. He was sentenced to an aggravated 20 years' imprisonment with 592 days' presentence incarceration credit. Rivas timely appealed.

## DISCUSSION

¶12 Rivas argues that the trial court erred by precluding reputation or opinion evidence of S.E.'s gang membership to show that he was the initial aggressor. When a defendant objects at trial, we review any alleged errors for harmless error. *State v. Romero*, 248 Ariz. 601, 603 ¶ 8 (App. 2020). If the defendant does not object, we review for fundamental error. *Id.*

When a defendant objects to a trial court's evidentiary rulings, we review any alleged error for an abuse of discretion. *Id.* at 606 ¶ 22.

**¶13**        Evidence is generally not admissible to prove that a person acted in conformity with his character, Rule 404(a), but a criminal defendant may offer evidence of pertinent character trait of the victim of the alleged crime, Rule 404(a)(2). A pertinent character trait may be proved by opinion testimony about the victim's reputation, Rule 405(a), or by specific instances of conduct when the victim's character trait is an essential element of a charge or defense, Rule 405(b). When a defendant claims self-defense, for example, he may present evidence that the victim had a violent reputation. *State v. Zaid*, 249 Ariz. 154, 159 ¶ 18 (App. 2020). He may also present specific instances of violent conduct, but only if he knew of them. *Id.* at 158 ¶ 12.

**¶14**        The trial court did not err by precluding evidence of S.E.'s alleged gang affiliation under Rule 405(a) because Rivas never argued that such evidence was admissible in the form of reputation or opinion testimony. Trial courts are not required to rule on issues not raised before them. *State v. Cannon*. 148 Ariz. 72, 76 (1985). In response to the State's motion to preclude, Rivas asserted that S.E.'s GMIC, alleged gang affiliation, and prior gang-related statements were admissible under Rule 404(a) and Rule 405(b). Because Rivas never argued that the evidence was admissible under Rule 405(a), the trial court was not required to decide that issue and therefore did not err. Because no error occurred, we need not decide whether any alleged error was fundamental.[1] *See State v. Escalante*, 245 Ariz. 135, 142 ¶ 21 (2018).

**¶15**        Rivas nevertheless argues that the State raised the issue in its motion and during oral argument. But the State's motion only cited the general rules regarding character evidence under Rule 404 and 405, and the State's citation to *Zamora* was in the context of arguing that S.E.'s alleged gang membership was not character evidence. The State never argued that evidence of S.E.'s alleged gang membership was inadmissible under Rule 405(a). And Rivas' citation to the oral argument transcript referencing the court's discussion with the State about opinion and reputation evidence related to an entirely different motion.

**¶16**        Rivas also argues that because the trial court excluded evidence of S.E.'s gang membership, his right to present a complete defense

---

[1]        In any event, evidence of gang membership is inadmissible under Rule 405(a). *State v. Zamora*, 140 Ariz. 338, 341 (App. 1984).

was violated. But the trial court's exclusion of this evidence did not prevent Rivas from presenting his defense. Although a defendant has a constitutional right to present a complete defense, he must still comply with the rules of evidence. *State v. Foshay*, 239 Ariz. 271, 279 ¶ 36 (App. 2016).

**¶17**      Evidence of S.E.'s gang membership was inadmissible as specific instances of conduct under Rule 405(b) because at the time of the offense Rivas was unaware of S.E.'s GMIC and gang-related statements to police. *See Zaid*, 249 Ariz. at 158 ¶ 12. He also never asked the trial court to admit evidence of S.E.'s gang membership under Rule 405(a). Even so, the trial court ruled that Rivas could present evidence of specific gang-related threats that S.E. made at the time of the offense, but Rivas never presented such evidence. The court also ruled that S.E.'s GMIC might be admissible to corroborate Rivas's version of the events if he laid the proper foundation but he made no attempt to do so. Rivas's right to present a complete defense was not violated.

**¶18**      Rivas argues next that the trial court erred by precluding the admission of additional statements from the jail call that the State had played for the jury. He contends that his statements were admissible under Rule 106 to add context to his statements about grooming himself for trial. "If a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part—or any other writing or recorded statement—that in fairness ought to be considered at the same time." Ariz. R. Evid. 106.

**¶19**      The trial court did not err by precluding admission of Rivas's statements that took place later in his jail call. The portion Rivas sought to introduce did not relate to his earlier statement that he was going to "pretend" to look like a "scared, innocent little puppy." Rather, his statements were declarations of innocence. Defense counsel even admitted that the statements did not take place until later in the conversation. Moreover, even if the trial court did err, such error was harmless because Rivas introduced another jail call where he stated that S.E. had swung a knife at him and that he was defending himself and his wife.

**¶20**      Rivas also argues that the trial court erred by allowing the State to play the jail call where he discussed his intention to groom himself because it undermined his presumption of innocence. He relies on *Estelle v. Williams*, 425 U.S. 501 (1976) and *Deck v. Missouri*, 544 U.S. 622 (2005) to support his argument.

¶21       Those cases are distinguishable from the present case, however, because they involved a defendant who was forced to wear prison attire or shackles during the trial. *See Estelle*, 425 U.S. at 512–13; *see also Deck*, 544 U.S. at 634. Rivas was not forced to appear at trial in his prison attire, in shackles, or ungroomed. Rivas's statement in his jail call was not about trying to avail himself of the presumption of innocence. Rather, he stated that he wanted to groom himself to "pretend" to look like a scared, innocent puppy. His use of the word "pretend" was evidence of guilt and was properly admitted to rebut testimony that he was scared of S.E. Therefore, the trial court did not err by admitting Rivas's jail call. And Rivas has not shown prejudice because the jurors were instructed on the presumption of innocence and jurors are presumed to follow those instructions. *See State v. Pedroza-Perez*, 240 Ariz. 114, 117 ¶ 13 (2016).

¶22       Rivas argues next that the trial court erred because it did not find that the prosecutor's reason for striking Juror No. 12 was a pretext for discrimination under *Batson*. "When reviewing a trial court's ruling on a *Batson* challenge, we review de novo the court's application of the law but defer to its findings of fact unless clearly erroneous." *State v. Butler*, 230 Ariz. 465, 474 ¶ 36 (App. 2012). A *Batson* challenge involves a three-step inquiry: (1) the opponent of the strike must make a prima facie showing of racial discrimination; (2) if shown, the striking party must then provide a facially race-neutral reason for the strike, and (3) if provided, the opponent must show the facially-neutral reason is pretextual for purposeful discrimination. *State v. Gentry*, 247 Ariz. 381, 384 ¶ 9 (App. 2019).

¶23       Whether Rivas made a prima facie showing of racial discrimination is unclear because his own counsel exercised a peremptory strike to remove the only other remaining African American juror before the prosecutor struck Juror No. 12. But this issue is moot because the prosecutor waived any argument that Rivas did not make the showing by providing his reason for the strike. *Hernandez v. New York*, 500 U.S. 352, 359 (1991); *State v. Gay*, 214 Ariz. 214, 220 ¶ 18 n.4 (App. 2007).

¶24       Even assuming that Rivas made such a showing, the prosecutor provided a race-neutral reason for striking Juror No. 12: he had a friend who had "shot up" a gas station, and the incident was caught on camera. The prosecutor explained that the incident here was not caught on camera and that Juror No. 12 had an idea of what a murder looks like and what evidence is needed to prove someone guilty. He also stated that Juror No. 12 was very young and did not have a lot of life experience. The court found that the reasons were race-neutral and allowed the strike. Later, in

its minute entry for the first day of trial, the court also found that Rivas had not met his burden of proving purposeful discrimination.

¶25            Rivas argues that *State v. Porter*, 248 Ariz. 392 (App. 2020), *rev. granted*, Nov. 3, 2020, requires this Court to remand the case so the trial court can make the required pretextual discrimination finding. This Court held there that when "confronted with a *pattern* of strikes against minority jurors, the trial court must determine expressly" that the prosecutor's proffered reasons are not a pretext for purposeful discrimination, particularly when one of the proffered reasons is the prospective juror's demeanor. 248 Ariz. at 397, 399 ¶¶ 16, 20–21. But here, the trial court expressly found that the prosecutor's proffered reasons were not a pretext for purposeful discrimination when it found that Rivas had not met his burden of proving purposeful discrimination. Therefore, Rivas' argument is unavailing.

¶26            Even so, *Porter* is inapplicable because the trial court here was not confronted with a pattern of strikes. *See id.* at 399 ¶ 21 (prosecutor struck the only two African American jurors and attempted to strike the only remaining minority juror). While the prosecutor moved to strike one African American juror for cause—with no objection from Rivas—he then challenged Rivas's attempt to strike Juror No. 16 for cause, and Rivas later used a peremptory strike on that juror. And unlike *Porter*, the prosecutor here did not attempt to strike the only remaining minority jurors, five of whom were on the jury panel, and he did not rely on a prospective juror's demeanor as a basis for the strike. *Porter* is therefore inapplicable.

¶27            Finally, Rivas argues that this Court should conduct a de novo review of the record and find that the prosecutor's striking Juror No. 12 was pretextual for purposeful discrimination. He contends that the prosecutor did not question Juror No. 12 and that when he questioned Juror No. 41, he gave him incorrect information about juror compensation. But "disparate questioning or investigation alone does not constitute a *Batson* violation." *Flowers v. Mississippi*, 139 S. Ct. 2228, 2248 (2019). Rather, disparate questioning, along with other evidence, may inform the trial court's evaluation of whether discrimination has occurred. *Id.*

¶28            The only additional evidence of discrimination Rivas offered was the prosecutor's telling another prospective juror that the juror would not be eligible for full compensation from the jury service fund until day four of trial when he would not be eligible until day six. The prosecutor's mistake in telling another juror that he would be eligible for full compensation two days sooner than the law provides is not evidence of

discrimination. Rather, if the prosecutor had provided that juror with the correct number of days, that would have further supported the juror's request to be excused for financial hardship; he told the court that he would experience financial hardship depending on how long it took to receive full compensation. Therefore, Rivas failed to show that the prosecutor's striking Juror No. 12 was a pretext for discrimination and the trial court properly allowed the strike.

**CONCLUSION**

¶29        For the foregoing reasons, we affirm.



AMY M. WOOD • Clerk of the Court
FILED:     AA