NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

STATE OF ARIZONA, *Appellee*,

*v.*

NOAH JACOB MCQUEEN, *Appellant*.

No. 1 CA-CR 25-0263

FILED 05-20-2026

---

Appeal from the Superior Court in Maricopa County
No.  CR2024-123702-001
The Honorable Monica Edelstein, Judge

**AFFIRMED**

---

COUNSEL

Arizona Attorney General's Office, Phoenix
By Michael O'Toole
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Joshua Messick
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Judge Cynthia J. Bailey delivered the decision of the Court, in which Presiding Judge Daniel J. Kiley and Judge D. Steven Williams joined.

---

**B A I L E Y**, Judge:

¶1        Noah Jacob McQueen appeals his convictions and sentences for aggravated assault, resisting arrest, and false reporting to law enforcement.  For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2        We view the facts in the light most favorable to sustaining the jury's verdicts.  *See State v. Reaves*, 252 Ariz. 553, 558, ¶ 2 (App. 2022).

¶3        On May 16, 2024, patrolling officers saw McQueen in "a little section . . . behind the dumpsters" in a CVS parking lot.  The officers approached McQueen, who initially provided a false name.  When the officers could not identify him, they told McQueen they would detain him and he "started to run."  The officers quickly grabbed McQueen, who struggled against their attempts to restrain and handcuff him.  McQueen "was able to get his elbow up and hit [one officer] across the nose," and the officer responded by striking McQueen in the face.  During the struggle, McQueen was told "numerous times" to stop resisting arrest.  Once McQueen was handcuffed, the fire department arrived and performed a preliminary medical evaluation, after which McQueen chose to be transported by ambulance to the hospital.  An officer who accompanied McQueen in the ambulance alleged McQueen threatened him in the ambulance and again at the hospital.  McQueen later kicked an officer in the neck while handcuffed to a hospital bed.

¶4        McQueen was charged with two counts of aggravated assault, one count of resisting arrest, one count of false reporting to law enforcement, and one count of threatening or intimidating.  The superior court found McQueen indigent and appointed counsel.  However, in November 2024 the court permitted the appointed counsel to withdraw based on communication problems.  McQueen then waived his right to counsel and asked to represent himself.  The superior court found McQueen's waiver of counsel was knowing, intelligent, and voluntary;

granted his request to self-represent; and appointed advisory counsel. Before trial, the superior court granted McQueen's request to assign an investigator to his case.

¶5        At his February 2025 jury trial, McQueen chose to defer his opening statement until after the State presented its evidence. During the State's case, McQueen provided a supplemental disclosure noticing the court-appointed investigator as a witness. The superior court found this disclosure was untimely and precluded the investigator from testifying. After the State rested, the superior court asked McQueen whether he would present any evidence. He told the court he did not want to testify and would offer no other evidence. When he requested to present his deferred opening statement, the superior court denied his request, reasoning that an opening statement previews the evidence and McQueen had presented none.

¶6        The trial proceeded with jury instructions and then both parties presented closing arguments. The jury acquitted McQueen on one count of aggravated assault and the threatening or intimidating count but found him guilty on the remaining three charges. The court sentenced him to five years' imprisonment.

¶7        McQueen timely appealed. We have jurisdiction under Article 6, Section 9, of the Arizona Constitution and Arizona Revised Statutes ("A.R.S.") sections 13-4031 and -4033(A)(1).

## DISCUSSION

I.    Opening Statement

¶8        McQueen argues the superior court erred in precluding him from making an opening statement. We review the superior court's ruling on the scope of an opening statement for an abuse of discretion. *State v. Pedroza-Perez*, 240 Ariz. 114, 116, ¶ 8 (2016). Arizona Rule of Criminal Procedure ("Rule") 19.1 governs criminal trial conduct in Arizona. Rule 19.1(b)(3) states that a defendant "may make or defer an opening statement," and Rule 19.1(b)(5) grants a second opportunity to "make an opening statement if it was deferred." Even so, the order of proceedings at trial may be altered if "the court directs otherwise," and this phrase grants the court discretion over the order of conduct of the trial. Ariz. R. Crim. P. 19.1(b); *State v. Nieto*, 186 Ariz. 449, 457 (App. 1996).

¶9        McQueen asserts the superior court abused its discretion when it precluded him from making an opening statement. An improper

restriction on the scope of an opening statement does not "deprive [the defendant] of the basic protections of a criminal trial" and is therefore non-structural error. *See Pedroza-Perez*, 240 Ariz. at 117, ¶¶ 15-16. We review a claim of non-structural error for harmless error when the defendant, as McQueen did here, objects at trial and thereby preserves the issue for appeal. *See State v. Henderson*, 210 Ariz. 561, 567, ¶¶ 17-18 (2005). Error is harmless if the State can establish beyond a reasonable doubt that the error did not contribute to or affect the verdict. *State v. Valverde*, 220 Ariz. 582, 585, ¶ 11 (2009), *overruled in part on other grounds by State v. Escalante*, 245 Ariz. 135, 140, ¶ 15 (2018).

¶10 Here, we need not decide whether the superior court erred because any such error was harmless. "The purpose of an opening statement is to advise the jury of the facts relied upon and of the questions and issues involved, which the jury will have to determine, and to give them a general picture of the facts and the situations, so that they will be able to understand the evidence." *State v. Burruell*, 98 Ariz. 37, 40 (1965) (citation omitted). Once McQueen elected not to testify or present evidence, he had no facts to present to the jury. And shortly after the superior court denied McQueen the opportunity to make an opening statement, he made a closing argument to the jury. His very brief closing argument neither recounted the evidence nor presented an argument explaining why the jury should find him not guilty. McQueen instead told the jury that "[w]e're here for whatever reason God has brought us here for. You're not going to make any decision today that God hasn't already made for you."

¶11 Even so, the State's evidence was straightforward and did not require an introduction by McQueen for the jury to understand it. The State presented testimony of the two officers involved in the incident and played video from their body-worn cameras. The jury needed no other information or context to understand what they heard or how it related to the charged crimes. The jury also considered McQueen's cross-examination of the two officers, which highlighted alleged factual inconsistencies in their testimonies. In addition, the jury acquitted McQueen on two of the five charges against him, demonstrating that they understood the facts presented in his favor even without an opening statement. *Cf. State v. Stuard*, 176 Ariz. 589, 600 (1993) (holding that the defendant's acquittal on some charges against him weighed against a finding of prejudice).

¶12 The State has established beyond a reasonable doubt that the denial of McQueen's opening statement did not affect the verdicts. Thus, we hold that any potential error from this denial was harmless and decline to reverse on this ground.

II.     Witness Preclusion

**¶13**        McQueen next argues the superior court erred in precluding his late-disclosed witness from testifying.  To prove the exclusion of evidence is error, a defendant must show that the exclusion affects the defendant's substantial rights and must make an offer of proof as to what the witness's testimony would have been.  Ariz. R. Evid. 103(a)(2).  But an offer of proof is not required if it is obvious what the proof will be or if the relevance and materiality of the excluded evidence is apparent.  *Id.*; *State v. Hernandez*, 232 Ariz. 313, 322, ¶ 43 (2013).

**¶14**        Here, the relevance of the investigator's testimony is not obvious.  McQueen sought to introduce photos of the arrest scene through the investigator's testimony.  In the State's case-in-chief, McQueen tried to use the photos to cross-examine the State's witness about the lack of no-trespassing signs on the property where he was arrested.  Whether signs were present is irrelevant to McQueen's case, as he was not charged with trespassing and his lawful right to be on CVS property was not an element of the charged offenses.  *See State v. Jurden*, 239 Ariz. 526, 530, ¶ 18 (2016) (holding that resisting arrest remains illegal even if the underlying arrest is not legal).  The excluded testimony is not obviously relevant or material, and thus McQueen needed to make an offer of proof to warrant its admission.  Because he did not, the court did not err by precluding the witness.

III.    Self-Representation

**¶15**        McQueen further argues that the superior court should have denied his request for self-representation.  The right to self-representation is guaranteed by both the United States and Arizona Constitutions.  *State v. Underwood*, 255 Ariz. 86, 88, ¶ 10 (App. 2023).  This right is balanced against the right to a fair, orderly trial.  *State v. Dunbar*, 257 Ariz. 421, 428, ¶ 24 (2024).  The request to self-represent must be timely and is subject to a finding that the waiver of counsel is made knowingly, intelligently, and voluntarily.  *State v. Cornell*, 179 Ariz. 314, 322 (1994).

**¶16**        The superior court found that McQueen's waiver was knowing, intelligent, and voluntary.  However, McQueen contends that given his mental-health concerns, he was not competent to self-represent and the court should have denied his request.  Self-representation at trial requires that a defendant have "sufficient mental capacity to understand the nature of the dispute; formulate a defense strategy; and engage with the

court, counsel, witnesses and, in some cases, the jury." *State v. Ibeabuchi*, 248 Ariz. 412, 416, ¶ 16 (App. 2020).

**¶17** The record reflects that McQueen had sufficient mental capacity. The court's colloquy with McQueen shows that he understood the charged offenses and was able to formulate a defense strategy based on the officers' conduct and whether his arrest was legally justified. While this strategy only partially persuaded the jury, it was logically coherent and displayed McQueen's ability to defend against the charges. The record shows that McQueen appropriately engaged with the court, participated in voir dire, and cross-examined the State's witnesses. McQueen may not have shown the same legal expertise as an attorney, but that does not indicate he was not competent to self-represent. "[A] defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation." *Faretta v. California*, 422 U.S. 806, 835 (1975).

**¶18** McQueen also argues that before trial, the superior court expressed concern that he was having a "mental health crisis" during a preliminary court appearance and considered referring him for Rule 11 competency proceedings. But McQueen omits that at two later hearings the same superior court judge expressed no concern about his mental health. Even so, having a mental health condition alone does not suffice to render a defendant incapable of self-representation. *See State v. Evans*, 125 Ariz. 401, 403 (1980) (holding that a defendant who underwent Rule 11 examination and was diagnosed as a paranoid schizophrenic could still understand the nature of his court proceedings and was therefore capable of self-representation). The superior court did not err in granting McQueen's request for self-representation.

IV.    Access to Courts

**¶19** Finally, McQueen argues he was denied meaningful access to the court and was thus denied a fair trial. McQueen, who was incarcerated while he awaited trial, contends that Inmate Legal Services did not file the motions he prepared, resulting in those motions being denied as untimely.

**¶20** The United States Constitution requires that an inmate be provided meaningful access to the courts. *Lewis v. Casey*, 518 U.S. 343, 350 (1996); *State v. Clark*, 196 Ariz. 530, 540, ¶ 47 (App. 1999). To succeed on a claim of denied access, a defendant must establish both a denial of meaningful access and that the denial actually injured the defendant's

ability to present a meritorious argument to the court. *Lewis*, 518 U.S. at 351; *Clark*, 196 Ariz. at 540, ¶ 47.

**¶21** The record does not support McQueen's contention that he was denied meaningful access to the court. McQueen asserted that he repeatedly tried to file documents through Inmate Legal Services, only to have the documents returned to him without being filed. However, McQueen did not allege that those documents were wrongly returned, but that they were rejected because they contained errors. Nothing in the record suggests that Inmate Legal Services wrongfully rejected the filings. And the superior court warned McQueen before he chose to self-represent that he would face difficulties because he was incarcerated and later offered to assist McQueen with filing documents once he raised the issue. Based on this record, we cannot conclude that McQueen was denied meaningful access to the court.

**CONCLUSION**

**¶22** We affirm McQueen's convictions and sentences.



**MATTHEW J. MARTIN • Clerk of the Court**
**FILED**: JR